LAPPIN & SCROFFORD v. THE BOARD OF COUNTY COMMISSIONERS OF NEMAHA COUNTY.

1. TAX-ROLL—*Correction of—Omitted property may be inserted.* County Commissioners have authority in December and January, after the tax-roll has passed into the hands of the Treasurer, to place on the tax-roll property omitted by the assessor, and charge up the proper taxes thereon.

2. PROPERTY SUBJECT TO TAXATION—*What Constitutes a Mortgage.* Where money is advanced, and the person making the advance takes a note for the money and a deed for land, and gives back a bond to reconvey the land on payment of the note, the whole series of transactions constitute a loan on mortgage.

3. —— *Deduction from Credits, when not allowed.* Money loaned secured by lien on real estate is not of that class of credits from which debts can be deducted in assessing property for taxation.

*Error from Nemaha District Court.*

THIS was a proceeding instituted under section 65 of the tax law of 1868, (Gen. Stat., p. 1041,) to discover property of the plaintiffs in error subject to taxation, and to place the same on the duplicate assessment roll for the year 1869.

In 1869 *Samuel Lappin* and *Charles G. Scrofford* resided in Richmond township, Nemaha county; they were partners, and their personal property was subject to assessment and taxation in said township.  *Lappin* listed his individual personal property for taxation, amounting to $3,000, and *Scrofford* listed his personal property, amounting to $3,700.  Neither of them listed their partnership property, and *Lappin*, when requested by the assessor to list the partnership property declined to do so.  They

admitted to the assessor that they were the owners on the first day of March, 1869, of school-district bonds worth $17,000, and of notes against T. H. Walker for $50,000; that to secure said notes, Walker had conveyed a large quantity of land to them, and they had given Walker a bond to reconvey the land if the notes were paid when due, and if not so paid said bond was to become void. The assessor made return of his assessment roll, but did not assess the bonds and notes owned by *Lappin & Scrofford.*

In December, after the tax-roll had been delivered to the county treasurer, proceedings were instituted before the board of county commissioners to correct the return of the assessor, and to insert the omitted property of *Lappin & Scrofford,* and charge them on the duplicate with the proper amount of taxes. The parties appeared, and the plaintiffs in error moved to dismiss the proceedings on the ground that the same were *not in time,* as the tax-roll had passed into the treasurer's hands, and beyond the reach of the county clerk, or board of commissioners. This motion was overruled, and evidence was taken by the board. The assessor, the parties sought to be charged, and several other persons were summoned and testified as witnesses. It was claimed by *Lappin & Scrofford* that they owed large sums of money, (some $84,-000) which should be deducted from their "personal property," and as these debts exceeded the amount of Walker's notes and the school bonds they were not liable to be assessed for said notes and bonds. The proceedings before the county board occupied several days; and on the 2d of January 1870, the board decided that Walker's notes were subject to assessment, and ordered that they be inserted in the assessment roll for the purposes of

taxation. To which decision and proceeding *Lappin &amp; Scrofford* excepted, and immediately removed the case to the Nemaha District Court by petition in error.

The cause was tried at the April Term, 1870, of the District Court, when the " order and judgment of the said board of county commissioners of Nemaha county" was affirmed. *Lappin &amp; Scrofford* excepted to the decision and judgment of the district court, and now bring the case here by petition in error for review.

*W. W. Guthrie,* for plaintiffs in error :

1. The board of commissioners had no authority to take any action toward correcting the return of the assessor after the *first day of November*, and certainly none after January 1, 1870. The *fiscal* year is the *calendar year;* and for taxation purposes all original steps for the taxes of a given year can only be taken in that year. These steps are in order—first, the assessment, before July, tax law, p. 1040, § 61; second, the Equalization, in July, p. 1034, § 43; third, the Levy of Taxes, in September, p. 1044, § 72; and fourth, the making of Tax Roll by November 1st, p. 1044, §§ 73, 74. This done, all proceedings which determine taxation for a given year are finally consummated.

The Tax Roll or Duplicate is the consummation, and when it is completed and goes into the Treasurer's hands, it forever passes beyond the control of the commissioners and county clerk; and can be used but for the one purpose of *tax receiving.* The adding of a penalty by § 79 does not carry back the Tax Roll to the clerk's office.

Although unlimited time seems given by § 65, p. 1041, yet the authority can only be exercised while the " tax roll" is within the *official* reach of the county clerk. The

law must be construed as a whole, and made harmonious. How then, can the clerk place further taxes "on the roll" after it goes to the Treasurer?

But cases of omissions are provided for in another way, after November 1st, by § 55, p. 1038; and thus it is seen, that unlimited time under § 65 was not intended.

Tax proceedings are *stricti juris*, and unless fully authorized by law are a nullity.

2. But only when the *value* of alleged property has been ascertained by the clerk can notice be given, and the duplicate corrected; and the case upon which the correction is made must be filed.

No *value* of the Walker notes was ascertained by the commissioners, or clerk. The face of the notes is no proof of value. 3 Ohio St., 25.

Defendants in error claim that the transaction between plaintiffs and Walker was in fact a mortgage. This investigation did not admit of any trial of that question, and the case must stand or fall on the facts as shown.

But we say, that the plaintiffs in error have title to lands; that they bargained to sell and take notes for full value, and no payment has ever been made. The case is in principle within *Parker v. Winsor*, 5 Kas., 362.

3. Plaintiffs in error show an indebtedness in excess of Walker's notes. Gen. Stat., p. 1022, § 6. Were these notes "credits," subject to deductions? Were they demands due or to become due, secured "by *lien* on real estate?" § 2, p. 1020, Gen. Stat. How can they be secured by *lien* on real estate to which plaintiffs in error held full title?

But the term "*lien*" has a well defined technical meaning; so has the term "mortgage;" and in absence of any apparent interest, the meaning of one term cannot be

given to the other. And this transaction is *not* a mortgage, nor an indebtedness requiring a sale of the security and an application of the cash proceeds.

*C. G. Foster*, for defendants in error:

1. The county commissioners had jurisdiction, and the power to make the order complained of. Sec. 65 of the tax law, (ch. 107,) provides that the proceedings may be had "at any time before the final settlement with the county treasurer;" and such final settlement is required to be made in *July* of each year: §§ 67, 68, ch. 31, p. 269.

Sec. 53 of ch. 31, p. 266, requires the county clerk to place on the tax-roll property omitted by the assessor. The assessment is not completed until June, and he makes his return to the county clerk. Laws of 1869, p. 250, § 36. The clerk makes out and delivers tax-roll to the treasurer, on or before November 1st; tax-law, § 73. And on the 11th of January, in each year, the county clerk is to place the ten-per-cent. penalty on the tax-roll. The tax-roll is accessible to the commissioners and clerk at all times to perform their duties required by law.

2. The Walker notes were subject to taxation without any deduction for "debts" owing by plaintiffs in error. *Debts* can be deducted from such "credits" only as are "*not* secured by lien on real estate." §§ 2, 6, tax law of 1868.

The transaction between Walker and plaintiffs in error amounts to a *mortgage*, to secure the payment of the notes. An absolute conveyance, with a bond to reconvey on payment of the debt, is only a mortgage. 1 Hill. on Mort., 59, 66, 80, 85; 1 Washb. on Real Prop. 479, 480, 482. 2 Kas., 83, 103, 114; 4 Kent's Com., 142, 144; 1 Wend., 433.

Plaintiffs in error may hold the *legal* title; but Walker is the *equitable* owner of the land; and his " notes " are a debt " secured by lien on real estate." If the bond to Walker is not recorded, an "innocent purchaser for' value" might possibly acquire a good title from L. & S.; but between the original parties, the rule is, "once a mortgage always a mortgage."

The opinion of the court was delivered by

KINGMAN, C. J.: This was a proceeding commenced on the 30th of December, 1869, and concluded on the 2d of January, 1870, by the defendants in error, to discover the personal property of the plaintiffs in error subject to taxation on the 1st day of March, 1869, and to place the same on the tax-roll. The county board decided that certain property was the proper subject of taxation for the year 1869, and that the same should be placed on the tax-roll. From this decision the plaintiffs in error appealed to the district court, which court affirmed the decision of the board, and that judgment of the district court is brought to this court for review.

Three grounds of error are alleged, either of which, if well taken, is fatal to the judgment of the district court. *First,* It is claimed that the defendants in error had no power to take the action they did in the premises at the time it was taken. *Second,* That the property placed on the tax-roll by the defendants in error, had no value, and was not properly a subject of taxation : *Third,* That if taxable, it was credits held by the plaintiffs in error on the first of March, 1869, and that their indebtedness at that time exceeded their credits, including the amount placed on the tax-roll, and that such indebtedness should have been allowed.

As to the first: It is claimed that "the fiscal year is the calendar year, and for purposes of taxation all original

**1. TAX-ROLL.** Omitted property may be inserted, by order of county commissioners.

steps for levying a tax can only be taken in that year; that these steps are—the assessment, which must be concluded before June 1st; the equalization, in July; the levy of the tax, in September; and the making out the tax-roll, and delivering the same to the treasurer by the first of November; that when these steps are taken, and the tax-roll goes into the hands of the treasurer, it passes entirely out of the control of the county commissioners and the county clerk, and can be used but for the single purpose of receiving taxes; and that while section 65, page 1041, General Statutes of 1868, in terms gives the commissioners power to amend the tax-roll at any time before the final settlement with the treasurer, yet, by the other provisions of the statutes the commissioners have in fact no power to touch or change the tax-roll, and therefore have no power or authority to add to the tax-roll any property omitted by the assessor; that the remedy for the omission is found in section 55 authorizing the assessor to double assess property omitted the previous year." The argument, the outlines only of which are stated, are ingenious and plausible, but must yield to the express provision of the statute. Not only does section 65 of the tax law provide differently, but section 55 of chapter 25, Gen. Stat., p. 226, makes it the duty of the clerk on the 11th day of January to charge up on the tax-roll the ten per cent. penalty on all unpaid taxes. For the time necessary to perform that duty he must have the right to use the tax-roll in the treasurer's hands, while section 53 of the same statute makes it the duty of the clerk to place on the tax-roll any property not before assessed, and

liable to taxation, and the same shall be collected as other taxes. It is obvious that this section contemplates that this may be done after the tax-roll is completed and in the hands of the treasurer. And this is also apparent from that part of the section that makes it the duty of the treasurer to inform the clerk of any omissions in the assessment. And how would the treasurer be more likely than any one else to know of omissions, until the tax-roll came into his hands? Again, section 58 of the same chapter makes absolute provision for the delivering of the tax-roll to the county clerk for one week after the close of any treasurer's term. These several sections abundantly show that while the treasurer is the proper custodian of the tax-roll, after he takes possession of it on the 1st day of November, he has not the exclusive control thereof, but holds it in subordination to the great purpose of making the property of all contribute its due share to the support of government; and with that object in view, allows such amendments to be made to the tax-roll as the law requires. Such amendments are now made by the clerk on the suggestion of the treasurer, under section 53, chapter 25; or under section 65 of the tax-law, upon the decision of the commissioners. In this light the construction of section 65 is neither difficult nor obscure; and the power of the board of commissioners at the time the action was taken in this case was full and complete over the subject-matter. We are cited to section 55 to show that if the property should be omitted by the assessor one year, it can be doubly assessed the next year; but this is a very inadequate remedy for the mistake, for if the property is personal it may in the meantime be removed from the State, and its owner with it. This section shows with the others quoted, how carefully the

legislature has provided many ways to make all property bear its share of the burden of taxation, and to indicate the spirit in which the laws should be examined, construed, and applied.

The second objection to the action of the board is less tenable, and presents no difficulty. The record shows that the plaintiffs in error held certain notes.

*2. Debts secured by lien on real property are taxable.* of Walker's amounting to $50,000. They had let Walker have the money, and had taken deeds from him for a large amount of land, and had given him a bond to reconvey the land to him on payment of the notes. Neither the deeds, the notes, nor the bond are made part of the record, though the deeds seem to have been read in evidence. We take them to be just what the testimony of one of the plaintiffs in error shows them to be, and that is, a loan, and a mortgage of land to secure it; and therefore properly taxable. It is claimed in this place that the value of the notes is not proved. We think otherwise. The notes showed the amount of the indebtedness, and the large quantity of land held as security authorized the board to consider them as proven good; and we will not disturb a conclusion based on such evidence.

This last conclusion settles the alleged ground of error, for the legislature for some reason has seen fit to define *3.——Credits; debts; deductions,* "credits" as any demand "not secured by lien on real estate," (§ 2, tax law;) while section six provides that "*debts* owing in good faith may be deducted from the gross amount of *credits;*" and these sections would not authorize a deduction in this case when the demand is secured by a lien on real estate.

The judgment must be affirmed.

All the Justices concurring.