THE KANSAS MUTUAL LIFE ASSOCIATION V. O. C. HILL, *as Treasurer of Brown County, et al.*

1. TAXATION—*Errors—Injunction.* Injunction cannot be maintained to restrain the collection of taxes justly chargeable against the plaintiff, merely because of errors and irregularities in the proceedings of the assessor.

2. INSURANCE COMPANY—*Reserve Fund.* The reserve fund of a mutual life insurance company organized on the coöperative plan, and having no capital stock, is subject to taxation.

3. CONTINGENT LIABILITY—*Indebtedness—Deduction.* The contingent liability of such an insurance company to its policy holders, before loss, is not such indebtedness as may be deducted from the credits of the company subject to taxation.

4. DEDUCTIONS, *not to be Made.* Debts owing in good faith cannot be deducted from the amount of cash on hand, or loans secured by mortgages on real estate, in listing the company's property for taxation.

*Error from Brown District Court.*

THIS action was brought by *The Kansas Mutual Life Association* against *O. C. Hill,* as treasurer of Brown county, and another, to enjoin the collection of certain taxes. Special findings of fact and conclusions of law were made by the court, as follows:

"FINDINGS OF FACT.

"1. The plaintiff is a corporation organized and doing business under the laws of the state of Kansas.

"2. It filed its charter in the office of the secretary of state of the state of Kansas on January 16, 1882, and organized as a mutual life association on the assessment plan.

"3. It so continued to do business until January 1, 1886, when its plan of assessments was changed to quarterly payment in advance of premiums, based upon the American experience tables of mortality, without filing a new charter or otherwise changing its plan of organization.

"4. O. C. Hill, at the time of the commencement of this suit, was the duly-elected, qualified and acting treasurer, and John F. Cashman was at said time, and now is, the duly-elected, qualified and acting sheriff of Brown county, Kansas.

"5. J. K. Klinefelter was the duly-appointed and acting

assessor of the city of Hiawatha, Brown county, Kansas, for the year 1889.

"6. On the 11th day of March, 1889, John E. Moon, secretary of said corporation, made out, verified, and delivered to said assessor, a statement of personal property belonging to said corporation March 1, 1889, and subject to taxation for said year, of the aggregate value of $1,000, and returned the same to the county clerk, and said secretary refused to list any other property.

"7. On the 30th day of April, 1889, the said J. K. Klinefelter, assessor for the city of Hiawatha, without notice to any of the officers or agents of said corporation, made another and different statement and returned the same to the county clerk, containing, in addition to the $1,000, the following:

| | | | |
|---|---|---|---|
| Assets | | $84,750 00 | |
| Less reserve fund | $29,590 00 | | |
| Less other personal property | 2,000 00 | 31,590 00 | |
| One-half | | 53,160 00 | $26,580 00 |
| | | | $27,580 00 |

and that the county clerk extended the taxes on this statement.

"8. Said corporation owned and possessed the following personal property, on the 1st day of March, 1889, and subject to taxation for the year, to wit:

| | |
|---|---|
| Real-estate securities | $17,267 00 |
| Cash in hand and deposited in bank | 25,294 21 |
| Furniture, blank books, etc | 2,000 00 |
| Total | $44,561 21 |

which said cash and securities were derived by setting aside 20 per cent. from each assessment as a guaranty fund, in accordance with § 10 of the law governing mutual life insurance companies, and did not exceed 1 per cent. of the insurance in force.

"9. Said property was assessed at one-half of its cash value, to wit, $22,280.60.

"10. The rate of taxation for all purposes in the city of Hiawatha for the year 1889 was 45¼ mills.

"11. The plaintiff tendered to the defendant O. C. Hill, county treasurer, on December 20, 1889, $50, in full of all taxes due from said corporation for all purposes for the year

1889, which tender has been kept good by the deposit of said amount with the clerk of this court.

"12. There was due, December 20, 1890, from the plaintiff, as taxes for the year 1889, the sum of $1,008.19$\frac{7}{10}$."

"CONCLUSIONS OF LAW.

"1. The property added by the assessor to the statement being subject to taxation, injunction will not lie to restrain the collection of the taxes on account of the irregularity of the assessor in making the assessment.

"2. The injunction should be modified and discharged as to the $1,008.19$\frac{7}{10}$ taxes actually due, and made perpetual as to all over that amount."

To these findings and conclusions plaintiff excepted, and also requested the court to further find as to the amount of outstanding policies of insurance, the amount of reserve, and present value of each policy, and whether it would exceed in amount a sum that might be purchased at the age of 30 years on the continuous-payment life-rate, American mortality, 4$\frac{1}{2}$ per cent., net premium $500. This request was refused by the court, and judgment entered in accordance with the special findings.

The testimony of John E. Moon, secretary of the company, shows the assets of the company on the 1st of March, the date as of which the assessment was made, to have been as follows:

Cash in office and treasury...................................... $25,291 31
Mortgage loans..................................................... 47,697 00
Premium notes...................................................... 2,694 03
Furniture............................................................ 1,190 19
Due from agents and others.................................... 438 69
Books, blanks, etc., about........................... $800 or 900 00

Of the securities held by the company, there were deposited in the state treasury $30,430, of which $28,735.18 belonged to what is termed the natural-premium fund, and the balance, of $1,694.87, belonged to the assessment policies. There were outstanding 239 assessment policies, amounting to $633,000, and 2,795 natural-premium policies, amounting to $5,767,000. It appears, also, that the company owed $10,-

000 on unpaid death losses. The corporation had no capital stock, and all its assets were derived from setting apart a portion of the premiums and assessments collected, and interest on investments.

Judgment according to the foregoing findings. The plaintiff brings the case to this court.

*H. M. Jackson,* for plaintiff in error:

Shortly after March 1, 1889, plaintiff in error, by its secretary, made out, verified and delivered to the proper assessor a statement of all its property subject to taxation, which property was then assessed at the value of $1,000, and which was all of the property of which said company was the owner, and all that was subject to taxation for the year 1889. Plaintiff did not refuse to make out and deliver to the assessor a statement of its property; but said assessor, not regarding his duties, without notice to the plaintiff, made out another statement, assessing other and different property to the plaintiff, amounting to the sum of $26,580, in addition to the sum of $1,000 above mentioned, which amount of $27,580 was by the county clerk extended upon the tax rolls of said county. The tax levy for all purposes upon said valuation of $1,000 was $45.25, full tender of which was duly made to the treasurer. The tax levy extended upon said assessment of $27,-580, as extended upon the tax roll of 1889, was $1,247.99.

The assessor has the power to increase or diminish the value of property listed; to make out a list of property if the owner refuses to make a statement or to be sworn thereto; and to return the statements received from persons to the county clerk; but in case of differences as to what property should be returned, or the correction of false statements, the assessor has no authority. It is left to the county clerk or commissioners to correct such returns, upon due notice. *Coal Co. v. Emlen,* 44 Kas. 117, 120.

The question presented is whether the funds found and proved to have been held by the company were exempt from

taxation.   The plaintiff company, though incorporated on the "assessment plan" under the statute, issued policies of that form until January, 1886, when it began to issue policies on the natural-premium plan, for cash payments.   Its liability for taxation was determined by the business in which engaged.   *Mu. Benev. Life Co. v. Marye,* 8 S. E. Rep. (Va.) 481.   And as to assessment-plan policies and assets, the exemption from taxation was fixed by the law applying to such companies; and as to natural-premium policies, and assets to meet the same, by the law applying to such policies.

The item, $1,694.87, securities in the hands of the state treasurer, was a guaranty or reserve fund, and was the sole property of the policy holders, and could only be paid out for payment of claims under certificates or policies.   Insurance Law, §§ 132, 133; Gen. Stat. of 1889, ¶¶ 3459, 3461.   It was, therefore, the property of the policy holders or beneficiaries only, and not the property of the company; but if the property of the company, it was a fixed indebtedness, to be deducted from assets, under § 6, tax law.   The item, $1,-674.39, cash in hands of company treasurer, was held for the same purpose.   The small number of such policies made it necessary to increase the amount of guaranty or reserve fund. It was collected for that purpose, and, under the condition of the policy, held for that purpose under the law cited, and could be used for no other purpose.   All of such fund, securities and cash, was properly held for a reserve fund for the purpose stated.   It was the fund of the policy holders, due to them, and not the fund or property of the corporation.   It could make no claim to it until the policies were first discharged. It was a debt which the policy holders could have recovered. *Life &c. Soc. v. Welch,* 26 Kas. 632.

It further appears from the testimony that the present worth of such policies, on the computation stated in the insurance law, (§ 77, ¶ 3401, Gen. Stat. of 1889,) was over $85,000, and the whole thereof was, under such section, exempt from taxation.   The spirit of such law is to make such funds the property of the policy holders and beneficiaries, and not the

fund of the company, and also to exempt the same from taxation.

" The premium reserve fund of an insurance company is the amount set apart by the company for the payment of losses occurring from the deaths of its policy holders. . . . Under a statute which declares that 'the indebtedness of the taxpayer shall be deducted, and the excess only taxed,' the premium reserve fund of an insurance company is exempt from taxation." *Insurance Co. v. Lott*, 54 Ala. 499; same case, 5 Ins. L. J. 897. See, also, *Equitable Life Ins. Co. v. Board of Equalization*, 37 N. W. Rep. (Iowa) 141; *Hawkeye Ins. Co. v. Board of Equalization*, 37 id. 966; *People v. Ferguson*, 38 N. Y. 89.

*W. F. Means*, for defendants in error:

1. It is claimed that the assessment was irregular and void. The county clerk used the statement signed by the assessor in making up the tax roll. The assessor followed the substantial requirements of ¶¶ 6907 and 6911, Gen. Stat. of 1889. *Ryan v. Comm'rs of Leavenworth Co.*, 30 Kas. 185. No notice of the listing the additional property was necessary, under the authority of the case just cited.

Paragraph 6918, and 44 Kas. 117, cited by plaintiff in error, refer to the proceedings of the county commissioners or county clerk after the assessor has made his returns to the county clerk, and cannot have any application to the facts in this case, for the reason that no change was ever made or attempted to be made by the clerk or board of county commissioners of the amount of property assessed against the insurance company.

This court has uniformly held, that where the property assessed is subject to taxation, and the taxes are not illegal, an injunction will not be granted to restrain the collection of the taxes, upon the ground that the assessment was irregularly made. *Ryan v. Comm'rs of Leavenworth Co.*, 30 Kas. 185; *K. P. Rly. Co. v. Russell*, 8 id. 558; *Adams v. Beman*, 10 id.

37; *Parker v. Challiss,* 9 id. 155; *Smith v. Comm'rs of Leavenworth Co.,* 9 id. 296.

2. Plaintiff in error claims it is exempt from taxation under ¶ 3401, Gen. Stat. of 1889. This position certainly cannot be maintained.

Plaintiff in error was a life insurance company organized on the coöperative plan, and was specifically excluded from the operation of the act under which it claims exemption. Gen. Stat. of 1889, ¶ 3402; *The State, ex rel., v. Bankers' &c. Ass'n,* 23 Kas. 499.

There is not a single word in the testimony in this case showing that any of the policies of the company were issued for the benefit of women, minor children, or for aged and infirm persons, as would be necessary in order to bring it within ¶ 3401, Gen. Stat. of 1889. The exemption of property from taxation is not favored by law, and all property should bear its just burden. Every presumption is against the intent to exempt, and such intent must clearly and specifically appear. 1 Desty, Tax. p. 132.

The property of this company could not be assessed against the policy holders, for the reason that the interest of the policy holder to the same was wholly contingent. If he ceased to pay, it became worthless. He could not surrender it and receive anything from the company. The policy had no present value. *Brown v. Thomas,* 37 Kas. 282.

3. Under the definitions given by our statutes, (Gen. Stat. of 1889, ¶ 6847,) there is a clear distinction between money and credits. The sum of $25,294.31 cash in the hands of the treasurer of the company was not a "credit" as defined by the statute. It did not lose its character as money by being deposited in the bank. It would have been improper to have deducted from this sum of $25,294.31, or from the sum $17,267 secured by lien on real estate, any of the debts of the company. *Lappin v. Comm'rs of Nemaha Co.,* 6 Kas. 403; *Brown v. Thomas,* 37 id. 282.

Outside of the sum of $10,000, which plaintiff owed for

accrued death losses, the company had no obligations which could be classed as debts owing in good faith, and which it would be proper to deduct from its credits in order to determine the amount of its taxable property.

The courts have held that a "contingent liability to pay" is not a debt owing in good faith, and that the clause, "debts owing in good faith," means a fixed liability to pay a sum certain due, or to become due at all events, and not a loss that has not happened and may never happen. *Insurance Co. v. Capellar,* 38 Ohio St. 560; *Kenton Ins. Co. v. City of Covington,* 5 S. W. Rep. 461; 37 Kas. 286; *People v. Davenport,* 91 N. Y. 574.

A contingent liability of an insurance company to pay losses is not such an indebtedness as can be deducted from its credits or assets in listing its property for taxation. *Insurance Co. v. City of Covington,* 5 S. W. Rep. 461; *People v. Davenport,* 91 N. Y. 574.

Plaintiff in error cites the case of *Equitable Life Ins. Co. v. Board of Equalization,* 37 N. W. Rep. 141, as authoritative. There is a distinction between that case and the one at bar. In the case cited, the policy holders had the right to surrender their policies and receive a part of the sum for which the life was insured, thereby giving the policy a fixed and definite value. In the present case, the policy holders, on March 1, 1889, had no such right.

The accumulating reserve fund of a mutual life insurance company, to continue liable for its losses during its existence, is subject to taxation. 1 Desty, Tax., p. 373; *Sun Mutual Life Ins. Co. v. New York,* 8 N. Y. 241.

The opinion of the court was delivered by

ALLEN, J.: The plaintiff seeks to enjoin the collection of certain taxes assessed against it, claiming that the assessment was made without authority of law by the township assessor, and that the property on which the assessment is based is not taxable. On the first proposition, it is insisted that the secretary of the company having, on the 11th of March, 1889,

sworn to a statement of the property of the company which it was bound to list for taxation, the assessor had no power or authority to return another, different list, as he did on the 30th day of April of that year, and include therein other property of the corporation. It may be conceded for the purposes of this case that the proceedings of the assessor were irregular and unauthorized, but this is an equitable action, and must be governed by equitable rules. The fact that the plaintiff's authorized agent made a return of the property of the corporation subject to taxation cannot avail the plaintiff in this action, unless it was a true return; otherwise the plaintiff would be obtaining an advantage from its own wrongdoing. It is well settled in this state that injunction cannot be maintained to restrain the collection of taxes, which the plaintiff justly ought to pay, because of errors or irregularities in the proceedings of the taxing officers. (*K. P. Rly. Co. v. Russell,* 8 Kas. 558; *Parker v. Challiss,* 9 id. 155; *Smith v. Comm'rs of Leavenworth Co.,* 9 id. 296; *Adams v. Beman,* 10 id. 37; *Ryan v. Comm'rs of Leavenworth Co.,* 30 id. 185.) The case of *Gibbins v. Adamson,* 44 Kas. 203, and *Coal Co. v. Emlen,* 44 id. 117, relied on by counsel for plaintiff in error, are not in point. In neither of those cases did it affirmatively appear that the plaintiff had failed to include all his taxable property in his statement. In this case it affirmatively appears by the testimony of plaintiff's secretary that the principal part of the company's property was omitted from the statement sworn to by the secretary and delivered to the assessor. If this property was taxable under the law, it should have been returned as such to the assessor, and the court will not by injunction aid the plaintiff in escaping its due share of the public burdens.

1. Taxation—errors—injunction.

We will now consider the main question in the case, namely, whether this property is taxable or not. It is urged on behalf of the plaintiff, that the company was liable to the holders of policies for the full amount of all its assets, and that it had the right to deduct the sum of its liabilities from its credits; also, that all funds held by the company were

properly held for a reserve; that they were held in trust for
the policy holders, and were not the property of the company;
that this applies both to the securities deposited with the state
treasurer, and to the funds in- bank and otherwise held by the
company. It is claimed that $72,754.77 of the funds of the
company were held to apply on what are termed "natural-pre-
mium policies"; that the present worth of such policies, com-
puted in accordance with ¶ 3401 of the General Statutes, was
more than this sum, and the whole therefore exempt from tax-
ation. Paragraph 3363 is also cited, as requiring the com-
pany to deposit with the state treasurer the net value of all
policies, valued as prescribed in the insurance act. Paragraph
3401 of the General Statutes is § 77 of chapter 93 of the Laws
of 1871, as amended by § 1, chapter 91, Laws of 1873, and
reads as follows:

"In case any life insurance company organized under the
the laws of this state shall have issued or shall hereafter
issue any policies of insurance upon the life of any individual,
or upon the life of any person expressed to be for the benefit
of any woman, whether married or unmarried, or for the
benefit of minor children, or for the benefit of any invalid,
aged or infirm person, whether the same be effected by them-
selves, for themselves, or by any other person or persons in
their behalf; all such policies and their reserves, or the pres-
ent value thereof, shall be payable according to the terms
thereof, and shall inure to the sole and separate use and benefit
of the beneficiary named therein, and shall be free from the
claims of the husband, or any creditor or representative of
the husband, and shall also be free from the claims of the
person or persons effecting such insurance, their creditors and
representatives, and shall also be free from all taxes, and the
claims or judgment of the creditors and representatives of
the person or persons whose life or lives are so insured; but
such policy of insurance, reserve or present value thereof
thus exempt shall not exceed in amount a sum that may be
purchased at the age of 30 years on the continuous-payment
life rate American mortality, interest $4\frac{1}{2}$ per cent. net pre-
mium, $500 and no more."

Section 78, ch. 93, Laws of 1871, reads: "The provisions

of this act shall not apply to life insurance companies organized on the coöperative plan." The plaintiff's claim of exemption from taxation under the provisions of this section fails for two reasons, either one of which is sufficient: First, it is not shown in the testimony or findings of the court how many of the policies outstanding are for the benefit of any woman, minor children, invalid, aged or infirm person, nor is the present value of any policy shown computed in accordance with the rules prescribed by this section. The secretary of the company testified with reference to the meaning of this section, but, from his testimony, it appears that he fails to comprehend the extent of the exemption. In the absence of a showing that the outstanding policies fall within the terms of the statutory exemption, the funds must be held taxable. But § 78, above quoted, by its express terms prevents the application of § 77 to the funds of such companies as the plaintiff, which is properly a mutual association, organized on what is termed in § 78 the coöperative plan. At first the plan of the company was to collect from its policy holders by assessments to meet losses as they occurred. Afterward the plan was changed, by requiring advanced payments at intervals of such sums as it was estimated under the experience tables would be sufficient to meet the losses as they might occur. The secretary testified that the amount shown to be necessary by the American tables was "loaded" 25 per cent., thus affording a surplus; that of this 20 per cent. was set aside for the reserve fund, and 80 per cent. held for what he terms the "mortuary fund," to pay current losses. No question is now presented as to the right of a mutual company having no capital stock to collect premiums in this manner. The secretary's testimony is to the effect that these policies were only binding from one payment to another until after 15 years, and that in case within that time the policy holder failed to make his payment he lost all claim on the reserves of the company.

2. Insurance company—reserve fund.

But it is contended that ¶ 3459 of the General Statutes makes this a sacred fund, which cannot be reached by taxation. That paragraph reads as follows:

"There shall be set aside and deposited with the treasurer of this state, as provided by § 11 of this act, by every mutual life insurance association doing business in this state under the provisions of this act, as a guaranty fund, not less than 10 per cent. from each assessment made for the payment of death claims. The said reserve shall be deposited and held as hereinafter provided, and shall be kept sacred, and be paid out only in the manner and for the purposes herein named. The net interest accruing upon such reserve shall be placed to the credit of the mortuary fund, and become a part thereof. When the death rate of said association shall be in excess of the American experience mortality table, or a semiannual ratio thereof, then and in that event the association may draw on such reserve fund to pay such excess. When such reserve shall have accumulated in excess of one per centum of the insurance in force in such association, such excess may, by the order of the board of directors or trustee thereof, be distributed by the treasurer of state to the members of said association for the payment of assessments."

This section applies, we think, as well to the fund claimed to belong to the natural-premium policies as to the assessment policies; and, while counsel has taken much care to separate them, we shall treat the whole as one fund. The trial court seems to have made a distinction between the amount deposited with the state treasurer, and that in bank and in possession of the company; but the finding on that point is to the effect that all of these funds were accumulated by setting apart 20 per cent. of each assessment. Just why $30,430 was in the state treasury, and the balance thereof kept out, does not clearly appear. If it was in fact part of a reserve, set apart in accordance with the statute, ¶ 3461 of the General Statutes requires that it be deposited with the state treasurer. Does the provision of the statute requiring this fund to be kept sacred by necessary implication exempt it from taxation? The law requires that a guaranty fund of at least 10 per cent. on assessments be so deposited, and imposes the

duty on the company of keeping this fund sacred, unless the rate of mortality shall exceed the American experience tables, in which event it can be used for the payment of losses. The company, however, is permitted to have the benefit of all income derived from the securities deposited. Interest accumulates on these securities to precisely the same extent after they are deposited with the state treasurer, that it does before, and the company receives the full benefit thereof without any added burden. No reason is apparent why notes and mortgages should be subject to taxation while kept in the company's safe, and exempted therefrom the minute they are placed in the state treasurer's vault. While it is a duty imposed by the statute on the company to keep this fund sacred, it does not follow that a special favor, by way of exemption from taxation, was intended to be thereby conferred on the company. The sum required to pay taxes need not necessarily be drawn from the deposited securities. It may be taken from any other moneys belonging to the company; and whenever the affairs of the company are in such condition that it cannot maintain its reserve intact, and meet its obligations, the question will arise as to whether the company can be permitted to continue its business—a matter not now considered. We cannot hold that the section under consideration contains an implied exemption from taxation of any part of the fund. These are the only provisions of the insurance law relied on. But it is still contended that the liabilities of the company under its outstanding policies are debts owing in good faith, which may be taken from the credits it holds. No doubt the $10,000 due on the 1st of March for death claims then payable was such a debt; but are the contingent liabilities created by the outstanding policies such debts as the plaintiff may deduct, if we concede that the securities held by it are of such kind that it would be entitled to deduct its indebtedness therefrom?

Our attention has been called to *Insurance Co. v. Lott*, 54 Ala. 499, which seems to support plaintiff's contention. The case of *Equitable Life Ins. Co. v. Board of Equalization*, 37 N.

W. Rep. Iowa, 141, relied on by plaintiff, differs from this case. The statute of Iowa allows a taxpayer to deduct his indebtedness from the amount of money or credits which he is required to list, and in that respect is quite unlike our own, which only allows such deduction to be made from credits not secured by liens on real estate, nor due from a bank on demand. The plaintiff in that case was a stock company to which its stockholders had contributed on their shares $100,000. The court regarded the shares as taxable at their cash value in the hands of the stockholders, and that this cash value would be augmented by whatever accumulations of profit the company held, to which they would be entitled in case of distribution. In the plaintiff company there are no stockholders. The policies issued by the plaintiff in that case were not forfeited by failure to pay premiums after two payments, but a paidup policy was issued for an amount fixed by the terms of the policy. The court held the reserves on such policies debts owing by the company. In this case, no such policies are outstanding. On the other hand, there are many authorities which hold that the contingent liabilities of insurance companies, both life and other, on policies outstanding before loss occurs, are not debts, within the meaning of the statute, which may be deducted from the credits of the company. (1 Desty, Tax., § 79; *Insurance Co. v. Cappellar*, 38 Ohio St. 560; *Kenton Ins. Co. v. City of Covington*, 5 S. W. Rep. 461; *People v. Davenport*, 91 N. Y. 574; *People, ex rel., v. Commissioners*, 76 id. 64; *Fire Ins. Co. v. Parker*, 35 N. J. L. 575; *Sun Mut. Ins. Co. v. Mayor etc. of New York*, 8 N. Y. 241.) The general rule is, that all property must bear its share of taxation, unless expressly exempted therefrom. There are no stockholders in this company to be taxed on their stock. No policy holder has a fixed right to any definite portion of the funds of the company. The ownership of all its assets of every kind is in the company alone. It is true that it has contingent liabilities, and is, in a sense, a trustee of the funds in its possession, but the beneficiaries of the trust are not yet determined except as to the $10,000 of losses already ac-

crued.   Each and any of the policy holders may forfeit their rights in the fund by failure to pay their assessments, and many of them probably will.   A contingent liability which

**3. Contingent liability—indebtedness—deduction.** is not susceptible of computation is not a debt owing in good faith which may be deducted from credits under the tax law, and we fail to find anything in the statutes indicating that it was the intention of the legislature that the reserve fund of an insurance company should be exempted.   It appears, also, that the plaintiff owns property largely exceeding the amount held taxable by the district court, which it could not in any event free from taxation by deducting its indebtedness from the value thereof.   The cash on hand and deposited in bank, as an ordinary deposit, payable on demand, is $25,294.21, and the

**4. Deductions, not to be made.** mortgage loans amounted to $47,697.   Under the rules prescribed in paragraphs 6847 and 6851 of the General Statutes, the plaintiff could not deduct its indebtedness from these items.   (*Lappin v. Comm'rs of Nemaha Co*, 6 Kas. 403; *Brown v. Thomas*, 37 id. 282.)

We find no error in the rulings of the trial court, and the judgment will be affirmed.

All the Justices concurring.