JOSEPH L. SHELDON *et al.* v. SIMON PRUESSNER *et al.*

1. ILLEGAL CONTRACT, *Not Enforced.* The courts, in the due administration of justice, will not enforce a contract in violation of law, or permit a plaintiff to recover upon a transaction against public policy, even if the invalidity of the contract or transaction be not specially pleaded.
2. MORTGAGE — *Fraudulent Assignment — Foreclosure.* Where a mortgagee, residing in this state, owns and has in his possession a note for $1,700, secured by a mortgage upon real estate in this state, and pretends to transfer, by merely indorsing his name thereon, but without actually delivering the same, such note and mortgage to his father in another state, without any demand being made upon him to do so, to secure $450 and interest for prior borrowed money, but really for the purpose of evading the payment of taxes justly due

the state, *held*, that, in an action brought in the name of the father to recover upon the note and mortgage, the mortgagee, on account of his acts in evading the payment of taxes and thereby defrauding the revenues of the state, cannot have any recovery in the name of his father or otherwise on any part of the note or mortgage belonging to him. *Held, also*, That if the father did not have any knowledge of such alleged transfer, and his name is used to collect such note and mortgage without his consent, or if he merely accepted the note and mortgage as a *particeps criminis*, to defraud the revenue laws, no recovery of any amount thereon can be had in his name.

3. NEW HOMESTEAD — *Prior Mortgage — Foreclosure.* Where a husband and wife jointly convey a homestead in exchange for other real estate to be occupied by them as a new homestead, upon which there is a prior mortgage, and the husband, with the consent of the wife, takes the conveyance of such real estate in his own name, and expressly assumes the payment of the mortgage thereon, the wife cannot, in an action to foreclose the mortgage, defend against it upon the ground that the real estate so purchased is a homestead, and therefore that the prior mortgage thereon at the date of the exchange is null and void.

4. INTEREST — *Higher Rate — Recovery.* Where a higher rate of interest is expressly reserved to be paid after maturity, such amount is recoverable, if not prohibited by statute.

5. ERRONEOUS JUDGMENT — *Costs.* Where a judgment is rendered upon two different notes, and for the foreclosure of two different mortgages given to secure the same, one in favor of the plaintiff, and one in favor of a codefendant, and the judgment on the note and the foreclosure of the mortgage in favor of the plaintiff are erroneous for want of sufficient evidence, it is error for the trial court to provide in the decree that upon the sale of the real estate all of the costs involved in the case, including the costs taxed upon the erroneous judgment, shall be first paid from the proceeds of such sale.

*Error from Shawnee Circuit Court.*

THIS action was brought in the circuit court of Shawnee county by *Simon Pruessner* against *Joseph L. Sheldon* and others, May 5, 1891, to foreclose a mortgage given by Joseph L. Sheldon and wife to Henry S. Pruessner, to secure the sum of $1,700, and interest.    Afterward Lewis M. Motter filed his answer, setting up and claiming a mortgage of $1,000, given by Henry S. Pruessner and wife, as a prior lien upon the lands and tenements described in plaintiff's mortgage, being the north-

west quarter of the southwest quarter of section 16, town 12, range 16, in Shawnee county. Joseph L. Sheldon and his wife, Lizzie S. Sheldon, filed separate answers to the plaintiff's petition, and also filed separate replies to the answer of their codefendant, Lewis M. Motter. The case was tried on the 5th of December, 1891, and judgment rendered for Simon Pruessner for $1,700, and interest at 7 per cent. per annum, and his mortgage foreclosed, and adjudged to be a second lien upon the premises described. Judgment was also rendered in favor of Lewis M. Motter against Henry S. Pruessner and wife for the sum of $1,000, and interest at 12 per cent. per annum from date of default, which sum was adjudged to be a first lien upon the same premises. Joseph L. Sheldon and his wife, Lizzie S. Sheldon, bring the case to this court.

*H. C. Root*, for plaintiff in error:

1. We find that the mortgage made by Joseph L. Sheldon and wife, Lizzie S. Sheldon, was executed to Henry S. Pruessner on the 6th day of June, 1888, and at that time the title to the land was in Henry S. Pruessner; that he did not convey the land to Joseph L. Sheldon until about the 14th of June, 1888, the deed being acknowledged on the 11th of June, 1888, and delivered June 14, 1888, and that there is no warranty in the mortgage. The wife of Joseph L. Sheldon held a homestead interest in their home on Western avenue, in the city of Topeka, which she parted with in lieu of receiving a homestead in this 40 acres of land. Now, it is clear that the mortgage of the Sheldons could not convey any interest in the land, because at this time they had no title or interest to mortgage. "Until he had title conveyed to him he could have nothing to mortgage." *Papin v. Goodman*, 103 Ill. 90.

See, also, 98 Ind. 257; *Planters' Bank v. Dickinson*, 33 Ga. 711; *Brewster v. Madden*, 15 Kas. 249.

2. The plaintiffs in error contend that there was no consideration for the $1,700 mortgage given by them June 6, 1888; that they were trading property, there being no money consideration on either side. They parted with their home-

stead for this piece of land, and if this case is sustained Henry S. Pruessner will acquire both homesteads without parting with a single dollar of value, while the plaintiffs in error will lose their home. See *State Bank v. Blevins*, 46 Kas. 536; 1 Dan. Neg. Inst. 832; 1 Perry, Trusts, 306; *Boon v. Barnes*, 23 Miss. 136; *Bell v. McConnell*, 37 Ohio St. 402; *C. & St. L. Rld. Co. v. Patterson*, 15 Ind. 73; Big. Fr., p. 303.

3. Simon Pruessner, the plaintiff, did not own the Sheldon mortgage for $1,700 when this suit was commenced, and therefore was not the real party in interest. There is simply a blank indorsement upon the note, and the assignment on the mortgage is not acknowledged. The testimony of Henry S. Pruessner shows that the note never left his possession, and the only consideration claimed by him for said note was a debt of $450 that he owed his father, but from his evidence it was only a debt of convenience. He says of the balance of the $1,700, "father holds it." See Story, Prom. N., p. 125; 1 Dan. Neg. Inst., p. 766; *Wiley v. Gatling*, 70 N. C. 420.

4. The witness Henry S. Pruessner says: "And in order to get rid of paying taxes on the note and the interest I owed, I sold the note to my father. In fact, I have not got anything of the money; therefore I sold to father, being I owed a part to him; and in case I want any more I will get it of him, because I am a poor man and I cannot afford to pay taxes on an amount I have not got."

"He who saves a sum of money by evading the payment of a tax does exactly the same injury to society as he who steals so much from the treasury, and is therefore guilty of as great immorality, or as great an act of dishonesty." 1 Shars. Bl., p. 58, note.

See, also, *Washburn College v. Comm'rs of Shawnee Co.*, 8 Kas. 344; *Mitchell v. Comm'rs of Leavenworth Co.*, 9 id. 349; *Holt v. Green*, 73 Pa. St. 198; *Huey's Appeal*, 1 Grant (Pa.), 53; *Craft v. McConoughy*, 79 Ill. 346; *Drexler v. Tyrrell*, 15 Nev. 114; *Valentine v. Stewart*, 15 Cal. 388.

5. The $1,000 mortgage, dated February 1, 1888, given by Henry S. Pruessner and wife to J. N. Strickler, cashier,

upon the northwest quarter of the southwest quarter of section 16, town 12, range 16, was attempted to be acknowledged before L. H. Pounds, who was at that time vice president of the Investment Banking Company, of Topeka, of which J. N. Strickler was cashier, and* was an interested party, being grantee, and therefore said attempted acknowledgment was a nullity. Although said Motter mortgage was recorded, it, not being acknowledged, did not impart notice to anyone; and, further, the alleged assignment of the Motter mortgage was not acknowledged. Gen. Stat. of 1889, ¶ 1130; *Sanford v. Weeks*, 38 Kas. 324; *Perkins v. Matteson*, 40 id. 165; *Wilson v. Traer*, 20 Iowa, 231; *King v. Weeks*, 70 N. C. 372.

6. Even accepting the theory of the court below, that the mortgage held by the defendant Motter is a valid lien upon the land therein described, still the court erred in rendering judgment for 12 per cent. interest on the principal note of* $1,000 and the coupon note for $40. Any stipulation for a greater rate of interest after maturity is null and void, and to enforce the same in a court of equity is inequitable and unjust, and contrary to precedent and authority. 2 Cooley, Bl. bk. 3, p. 432.

*Bishop Crumrine*, for defendants in error Simon Pruessner, Henry S. Pruessner, and Lizzie Pruessner:

As far as the Pruessner judgment is concerned, the plaintiffs in error assign four grounds only for its reversal, to wit: 1st. The Sheldons did not own the property when they mortgaged it. 2d. There was no consideration for the $1,700 note and mortgage. 3d. Defendant in error [Simon Pruessner] was not the owner of the $1,700 note and mortgage. 4th. The assignment of the $1,700 note and mortgage, by Henry S. Pruessner, was for an illegal purpose, and therefore void. These points will be considered in their order.

1. The deed conveying title to Sheldon was made June 5, 1888, and the mortgage securing the balance of purchase money, $1,700, from Sheldon to Pruessner was made June 6, 1888, but it was all one transaction.

2. Plaintiffs in error claim that this property was placed in the agent Vesper's hands for sale, at $6,800, and that he, without authority and on his own motion, raised the price to $8,000, and for this reason that there was no consideration for the note of $1,700. The testimony does not sustain this claim. It is a well-settled rule of law in this state, that where there is any evidence to support the verdict, it will not be disturbed. *Weil v. Eckard*, 37 Kas. 696.

3. Plaintiffs in error contend that Simon Pruessner was not the owner of the $1,700 mortgage, and therefore not the real party in interest, because the assignment on the note was in blank, and the assignment on the mortgage was not recorded, and that the note and mortgage never left the possession of Pruessner. The assignment on the note is correct, and the assignment on the mortgage need not be recorded. There is not one particle of evidence that the note and mortgage never left the possession of Pruessner; but, on the contrary, the testimony of Pruessner is, "that he paid this debt by turning over this mortgage to his father." The debt was $450 hard cash which Pruessner had received from his father.

4. Plaintiffs in error further contend, that the assignment to Simon Pruessner was for an illegal purpose, and therefore void. Simon Pruessner was the plaintiff below, not Henry S. Pruessner. The attention of the court is called to the full statement of Henry S. Pruessner. He could not get his interest from Sheldon. He had to pay interest on the Sheldon mortgage, which he had assumed. Sheldon had defaulted in the interest on the mortgage he had assumed. He owed his father $450, and wanted to get more money from him; and, in addition, he had always listed and paid the tax on this $1,700 note while he had it, and being a poor man, he assigned it to his father so he would not have to pay taxes in the future on it. This was perfectly legitimate, and was not for an illegal purpose. A man is not bound to keep his property in this state merely to pay the tax upon it. *Gilman v. Roberts*, 79 Wis. 450; 7 Wait's Act. & Def. 72.

The judgment of the court below, as far as this mortgage is concerned, should be affirmed.

*A. Bergen,* for defendant in error Motter:

On February 1, 1888, Henry S. Pruessner owned the northwest quarter of the southwest quarter of section 16, township 12, range 16, 40 acres, in Shawnee county, being the land involved in this suit. On that day he and his wife made a mortgage of said land to "J. N. Strickler, cashier," to secure their note for $1,000, due on February 1, 1891, with 8 per cent. per annum interest, payable semiannually until maturity, according to the tenor of six coupons, and, as specified in the note, "This note and these coupons are to draw 12 per cent. interest per annum after maturity." The mortgage waived appraisement, and provided that, upon default, "the legal holder or holders hereof may immediately cause this mortgage to be foreclosed, and shall be entitled to immediate possession of the premises, and the rents, issues and profits thereof." This mortgage was acknowledged before L. H. Pounds, notary public, and was duly recorded February 28, 1888. Plaintiffs in error here attempt to make a point, by alleging that J. N. Strickler was cashier of the Investment Banking Company, and that L. H. Pounds was vice president of the company, and could not take the acknowledgment. The mortgage does not show that it was made to the Investment Banking Company nor to J. N. Strickler as cashier of that company. The record shows that plaintiffs in error introduced as a witness T. L. Pounds, who testified that, at the time this acknowledgment was taken, he, T. L. Pounds, not L. H. Pounds, was vice president of the Investment Banking Company. There was no evidence that L. H. Pounds or T. L. Pounds or the vice president of the Investment Banking Company owned any stock or had any pecuniary interest in the company.

As against Joseph L. Sheldon and his wife, Lizzie S. Sheldon, who claims only through him, it was not necessary that this mortgage should have been acknowledged or recorded,

because, by the deed to Joseph L. Sheldon, he had express notice in fact of this mortgage, and assumed to pay it as part of the consideration for the purchase of said land; and Lizzie S. Sheldon has no interest in the property except as the wife of Joseph L. Sheldon. This note and mortgage were duly assigned March 5, 1888, by J. N. Strickler, cashier, to the defendant Lewis M. Motter, although the assignment of the mortgage was not then acknowledged, but it was nevertheless assigned.

If the answer of defendant Lewis M. Motter was not sufficiently specific in its allegations as to the interest of Lizzie S. Sheldon to sustain a judgment by default, or upon demurrer thereto, yet she neither made default nor demurred, but replied, setting up her claim of interest and title, and went to trial thereon. Under these circumstances, it has been repeatedly decided by this court that it would be too late for her to make this objection to a petition; and, *a fortiori*, it is now too late for her to claim that the answer of Lewis M. Motter was insufficient. *Clay v. Hildebrand,* 34 Kas. 694, 703, 704; *Sanford v. Weeks,* 39 id. 649, 650.

The answer of Lewis M. Motter prayed for sale in foreclosure. "And that upon such sale all of said defendants, and each of them, be forever barred and foreclosed of and from all right, title, estate, interest, property, or lien in, to or upon said premises, and every part thereof." At the time of making the mortgage and of the filing of this answer and of the rendering of this judgment, there was no law providing for redemption under any circumstances from sheriffs' sales. There was no such thing as "equity of redemption;" hence, it was not mentioned in the answer nor in the judgment.

After such a sale, by the law, all the previously-existing rights in the property of all parties to the suit are cut off by the sale. This court has said: "Whether the equity be indeed cut off depends not on the form of the decree, but upon the law determining the effect of the sale." *Kirby v. Childs,* 10 Kas. 639–643.

Where there is an express stipulation that a certain rate of

interest shall run after maturity, interest at that rate is recoverable. 11 Am. & Eng. Encyc. of Law, pp. 416, 417, and cases cited in note; 3 Rand. Com. Paper, § 1713, p. 823, and cases cited; *Ansel v. Olsen,* 39 Kas. 769.

The opinion of the court was delivered by

HORTON, C. J.: In the answer of Joseph L. Sheldon to the petition of Simon Pruessner upon the note and mortgage executed by Sheldon and his wife to Henry S. Pruessner, on June 6, 1888, for $1,700, with interest, it was denied, among other things, that Simon Pruessner was the holder or owner of the note and mortgage, and it was also denied that he had any interest therein, the allegation being that the alleged transfer to him was colorable only, and without consideration. It appears from the evidence of Henry S. Pruessner that his indebtedness to his father before the transfer of the note and mortgage was $450. If he had given the note secured by the mortgage to his father, or if he had sold the note in good faith to his father for $450 only, or for any other sum, Simon Pruessner might be entitled, as the holder and owner thereof, to recover the amount with interest, and also to have a foreclosure of the mortgage. If it were not for the general finding of the trial court in favor of Simon Pruessner, there would would be no trouble whatever in this case. Simon Pruessner, the father, lives in Missouri. Henry S. Pruessner, the son, lives in Shawnee county, in this state. Henry testified, among other things, as follows:

"In order to get rid of paying taxes on the note and interest I owed, I sold the note to my father. In fact, I have not got anything of the money. Therefore I sold to father, being I owed a part to him, and in case I want any more I will get it of him, because I am a poor man, and I cannot afford to pay taxes on an amount I have not got, and pay interest on the same amount at the same time.

"Ques. How did you sell it (the note) to him (your father)? Ans. I wrote him.

"Q. What did you write him? A. A letter.

"Q. What were the contents of the letter? A. It was being I owed him some money.

"Q. For what? A. I borrowed it.

"Q. When? A. Just before I made that transfer.

"Q. How much did you borrow? A. $450.

"Q. $450? A. Yes, sir.

"Q. How was that $450 given to you? A. By note.

"Q. What was the date of the note? A. I could not say.

"Q. Was the note ever paid? A. No, sir.

"Q. What cash did you ever get from your father? A. That much cash.

"Q. When? A. I could not state the exact time.

"Q. How did you get it? Did he pay you cash in hand? A. He sent a part, and paid a part in cash; sent by money order and registered letter.

"Q. Can you locate the year in which the $450 was paid? A. No, sir.

"Q. Was it 1890? A. No, sir.

"Q. Was it 1888? A. It was before we had any transaction — before I disposed of the property.

"Q. That would make it before 1888? A. Yes, sir.

"Q. Before Sheldon bought? A. Yes, sir.

"Q. What about the balance of this mortgage? How much do you claim the Sheldons are owing you? A. $1,700.

"Q. What was to become of the balance of the $1,700, when collected, after the paying of the $450? A. Father holds it.

"Q. For you? A. Yes, sir."

The note and mortgage were not transferred at the time that any of the money was borrowed. No demand was made upon Henry for security by his father, or for any transfer of the note or mortgage. They bear the blank indorsement of Henry, but it does not appear that they were delivered personally to Simon Pruessner, or that he employed the attorney to commence this action. It does appear that one of his brothers supports him; that Henry employed the attorney, and that the note and mortgage have been either in his possession or the possession of the attorney all the time. Henry was present at the trial, and seems to have been very much interested. Simon Pruessner was not present at the trial, neither was his deposition read. Construing all of the evi-

dence as favorably as possible for Simon Pruessner, it appears
that the note was merely transferred by Henry to evade the
payment of taxes justly due in this state, and thereby to de-
fraud the revenues of the state. His claim, that he wanted
to secure $450 of borrowed money due his father, seems
rather a mere incident of the transfer — the excuse, but not
the controlling motive. The uncontradicted evidence is, that
the transfer of the note and mortgage were made "to get rid
of paying taxes."

We could fairly sustain the general finding of the trial
court upon the Pruessner mortgage if Henry had not testi-
fied that the transfer was made "to get rid of paying taxes,"
and because "he was a poor man and could not afford to pay
taxes." This evidence does not seem to us to have been fully
considered by the trial court. Perhaps it was not considered
because the illegality of the transfer was not specially pleaded
in either of the answers, but this was not necessary. The
courts, in the due administration of justice, will
not enforce a contract in violation of law, or per-
mit a plaintiff to recover upon a transaction
against public policy, even if the invalidity of the contract
or transaction be not specially pleaded. (*Oscanyan v. Arms Co.*,
103 U. S. 261, and cases cited.) Henry had no hesitation in
stating the illegal purpose for which he, in part, transferred
the note and mortgage, and cannot complain if this court
gives it full effect. Notes and mortgages are subject to taxa-
tion in this state. (Gen. Stat. of 1889, ¶¶ 6846, 6847, 6849;
*Life Association v. Hill*, 51 Kas. 636. Cooley, in his work
on Taxation, says:

1. Illegal con-
tract, not en-
forced.

"There is not only a necessity for taxation, but it is emi-
nently just and equitable that it should be as near equal as
possible. Hence it is the policy of the law to require all
property, except such as is specially exempted, to bear its pro-
portion of the public burdens."

"He who saves a sum of money by evading the payment
of a tax does exactly the same injury to society as he who
steals so much from the treasury, and is therefore guilty of as

great immorality, or as great an act of dishonesty." (1 Shars. Bl. Comm., p. 58, note; *Railroad Co. v. Morris*, 7 Kas. 210.)

Whatever tends to interfere with the beneficial operation of the statute is unlawful, as against the policy of the law. Whatever tends to obstruct duty by defeating the letter or spirit of the law is also unlawful, and the courts will not enforce any agreement or contract for the benefit of one through whose direction or assistance the law is violated, or public policy contravened. The law attempts to close the doors to temptations by refusing such parties recognition in the courts. (37 Cent. L. J. 313.)

"No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If, from the plaintiff's own statement or otherwise, the cause of action appears to rise *ex turpi causa*, or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because it will not lend its aid to such a plaintiff." (*Valentine v. Stewart*, 15 Cal. 389; *Wilcox v. Ellis*, 14 Kas. 588; *Gaston v. Drake*, 14 Nev. 175; *Drexler v. Tyrrell*, 15 id. 114.)

If Simon Pruessner is a *bona fide* owner and holder of the note for $450 and interest, we think he may be permitted to recover that amount, and have his foreclosure; but, if Henry transferred the note and mortgage to evade the paying of taxes on his interest therein, he cannot be permitted, through Simon Pruessner, to recover any part of the note and mortgage for his own benefit. As before stated, if the note and mortgage had been transferred in good faith as a gift, sale, or as collateral security, without any wrongful intent or purpose on the part of Henry to defraud the revenue laws of the state, the whole amount thereof might be recovered by any owner or holder of the same. But the evidence of Henry, as appearing in the record, unexplained, prevents, in this case, the rendition of the judgment upon the note and mortgage taken by him from the Sheldons, and now attempted to be enforced in the name of his father.

2. Mortgage— fraudulent assignment— foreclosure.

The claim that Joseph L. Sheldon did not own the mort-gaged property on the 6th day of June, 1888, at the time of the execution of the note and mortgage, and, therefore, that there was no consideration given for the $1,700 note, is not tenable. Henry S. Pruessner, Joseph and Lizzie S. Sheldon exchanged places; the Sheldons conveying by joint deed their homestead in the city of Topeka to Henry S. Preussner for the 40 acres of land described in the petition, and giving the $1,700 note secured by the mortgage. Henry S. Pruessner may not have actually delivered the deed to the land to Joseph L. Sheldon until a day or two after the mortgage to him, but, at the time of the execution of the note and mortgage, the negotiations for the exchange were completed. The deed to Joseph L. Sheldon is dated the 5th day of June, 1888, and was acknowl-edged on the 8th day of June, 1888. The mortgage is dated the 6th of June, 1888, was acknowledged on the 11th day of June, 1888, and recorded on the 14th day of June, 1888. Therefore, we suppose all of the papers were exchanged about the same time; that all the conveyances were a part of the same transaction. The note and mortgage were really a part of the purchase money, and the mortgage operates at least upon the estate acquired from Henry, the mortgagee. The only estate attempted to be foreclosed is that obtained from Henry S. Pruessner, and it is not contended that the Shel-dons succeeded to any after-acquired title from anyone except from Pruessner.

Another contention in the case is that the Motter mortgage of $1,000 was not entitled to be recorded, because it was ac-knowledged before an interested party, and therefore that Mrs. Sheldon had no constructive or valid notice thereof. The note held by Motter was originally given to J. N. Strickler, cashier, by Henry S. Pruessner and wife, and the mortgage was taken to J. N. Strickler, as cashier; the ac-knowledgment was taken before L. H. Pounds, notary public. There is nothing upon the face of the mortgage tending to show that Pounds was an interested party. It appears, from the evidence outside of the mortgage, that J. N. Strickler was

the cashier of the Investment Banking Company, at Topeka,
and that T. L. Pounds was the vice president of that com-
pany — not L. H. Pounds, the person taking the acknowledg-
ment.   There is no evidence in the record that L. H. Pounds,
the notary public, is or was interested in the Investment Bank-
ing Company.   When the deed of the mortgaged premises
was executed by Henry S. Pruessner and wife to Joseph L.
Sheldon, the latter accepted the same upon the expressed con-
dition that he assumed the payment of the Motter mortgage;
therefore, he not only had personal knowledge of the mort-
gage, but agreed to pay the same to obtain the conveyance of
the property.   The amount of the prior mort-
gage was in the nature of purchase money.   No
property is exempt from the payment of obliga-
tions contracted for the purchase thereof.   Further than this,
it appears from the evidence that Joseph L. Sheldon was ab-
sent on business during a part of the negotiations for the ex-
change of properties, and that his wife, Mrs. Sheldon, had
very much to do with the exchange.   It is probable that she
had actual notice of the Motter mortgage, or rather of the
prior incumbrance on the premises received in exchange for
her homestead.   The note held by Motter was dated Febru-
ary 1, 1888, and matured in three years thereafter.   The rate
of interest per annum specified in the note was 8 per cent.
until maturity, and 12 per cent. after maturity.   Where there
is an express stipulation that a certain rate of
interest shall run after maturity, interest at that
rate is recoverable.   (11 Am. & Eng. Encyc. of
Law, pp. 416, 417, and cases cited in note; 3 Rand. Com.
Paper, § 1713, p. 823, and cases cited; *Ansel v. Olsen*, 39 Kas.
767.)

The judgment of the trial court, as rendered and entered
of record, is erroneous as a whole, because the judgment in-
cludes not only the amount of the note and mortgage given
by the Sheldons to Henry S. Pruessner, but also provides
that all of the costs, including the costs in the litigation over
the Preussner note and mortgage, as well as the Motter mort-

**5. Erroneous
judgment—
costs.**
gage, are to be first paid from the proceeds of the
sale of the mortgaged premises. The order of
sale also contains this erroneous feature. As the
costs were improperly adjudged against the Sheldons upon
the Pruessner note and mortgage, those costs ought not to
have been included in the judgment or the order of sale.

Under these circumstances, the judgment will be set aside,
and the cause remanded for further proceedings.

All the Justices concurring.