No. 21,381.

THE STATE OF KANSAS, ex rel. S. M. BREWSTER, as Attorney-general, etc., *Appellee*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WYANDOTTE, *Appellant*.

SYLLABUS BY THE COURT.

1. BONDS — *New Court House — Limit of Outstanding County Indebtedness—Refunding Bonds to be Counted.* In estimating the amount of outstanding indebtedness of a county to ascertain the one per cent limit beyond which it may not issue bonds (Laws of 1909, ch. 62, §§ 1, 2, Gen. Stat. 1915, §§ 623, 644), refunding bonds are to be counted as the statute does not authorize their exclusion.

2. SAME—*Limit of Bonded Indebtedness—Certain Bridge Bonds Not to be Counted.* Section 1 of chapter 62 of the Laws of 1909, limiting indebtedness in counties to one per cent of the taxable property of the county is to be construed together with chapter 64 of the Laws of 1909 (Gen. Stat. 1915, §§ 750-754), relating to public bridges in certain counties, and so construed, it is held that certain bonds issued by Wyandotte county in payment of the cost of raising, lengthening and

reconstructing bridges over the Kansas river to meet the requirements of the war department of the United States and of the Kaw Valley drainage board are not to be counted in ascertaining the limit of indebtedness which the county may lawfully incur.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. McCAMISH, judge. Opinion filed July 7, 1917. Affirmed.

*James H. Luscombe*, county attorney, and *Samuel Maher*, of Kansas City, for the appellant.

*S. M. Brewster*, attorney-general, *S. N. Hawkes*, and *John L. Hunt*, assistants attorney-general, for the appellee.

The opinion of the court was delivered by

PORTER, J.: At the general election in November, 1916, a large majority of the voters of Wyandotte county voted in favor of the erection of a courthouse to cost $400,000, and to raise this sum by the issuance of bonds. The board of county commissioners had taken all the preliminary steps and was about to issue the bonds of the county to build the courthouse when the state, on the relation of the attorney-general, brought this action to enjoin the issuance of the bonds. The district court found in favor of the contention of the state, that Wyandotte county had already exceeded the one per cent limit of bonded indebtedness fixed by the statutes. From this judgment the county has appealed.

The defendant admits that the assessed valuation of all property in Wyandotte county for purposes of taxation as fixed and determined by the board of equalization for the year 1916 is $117,487,097, and, therefore, the limit of the county's indebtedness is $1,174,870.97. The answer also admits that the total bonded indebtedness of the county is $2,626,467.13, but it is contended that in estimating the limit of its indebtedness certain refunding bonds and also certain bridge bonds should not be counted.

1. As to the refunding bonds the contention is that the several acts under which they were issued contain provisions excluding them from the estimate. For instance, the county is still indebted on refunding bonds to the amount of $342,000,

issued to take up outstanding warrants under the provisions of chapter 150 of the Laws of 1911, section 5 of which contains this provision:

"None of the restrictions and limitations contained in any of the statutes of the state of Kansas, heretofore enacted, shall apply to or in any way affect the issuance of the bonds under this act or of any bonds so issued." (Gen. Stat. 1915, § 2879.)

The contention of the county in respect to the refunding bonds is not sound. The provision quoted merely applies to the *issuance* of the refunding bonds themselves. That is to say, they may be issued no matter what the bonded indebtedness of the county may be, and very properly so, because they are merely exchanged for former bonds or evidences of the same indebtedness. But after being issued they are to be counted in determining the limit of the county's actual bonded indebtedness.

If the county by merely refunding its indebtedness could thereby eliminate that part of its indebtedness from consideration in ascertaining its power to issue subsequent bonds, there would be no limit to the amount of indebtedness the county might incur. We deem it wholly unnecessary to attempt to reconcile the apparent conflict in decisions cited from other states, some of which depend upon constitutional provisions and others upon statutes worded differently from ours.

Section 2 of chapter 62 of the Laws of 1909 provides for the compromise of existing indebtedness by refunding bonds, with this express declaration:

"And provided further, That *except for the refunding of outstanding debt, including outstanding bonds and matured coupons thereof, or judgment thereon, no bonds of any class or description shall hereafter be issued where the total bonded indebtedness of such county or township would thereby exceed one per cent of the assessment for taxation.*" (Gen. Stat. 1915, § 644.)

The defendant argues that this was intended to except all refunding bonds from the provision prohibiting the issuance of bonds beyond one per cent of the total bonded indebtedness; but we think the provision simply reaffirms the intention of the legislature that whenever the issuance of bonds is authorized for the purpose of refunding outstanding debt, whether represented by outstanding bonds, matured coupons thereof,

The State, *ex rel.*, v. Wyandotte County.

or judgment thereon, the general prohibition against issuing bonds in excess of the one per cent limit shall not apply.

Another argument advanced is that when the refunding act was first amended in 1891 (Laws of 1891, ch. 163, § 2) by the provision that no bonded indebtedness shall be refunded except such as have been issued and outstanding at least two years at the time of such refunding, the legislature created the only limitation upon the issuance of refunding bonds. We think the legislature had another purpose in enacting this provision. Prior to its enactment it was not uncommon for bonds to be issued by counties, cities and townships, which were of doubtful validity, and immediately after they were issued cut off all defenses to them by refunding the debt at a lower rate of interest or by an extension of the time of payment. The evident purpose of the amendment of 1891, which has been carried through all subsequent amendments to the refunding acts, was to require a period of two years to elapse from the time the debt was first created before it could be refunded and thereby preserve the right to raise any defenses that might be urged against the original indebtedness.

We see no room for any distinction between the refunding bonds issued by the defendant under the general refunding acts and those issued under chapter 150 of the Laws of 1911. Notwithstanding the latter was a special act applying only to counties with more than 90,000 population, and authorized the issuance of bonds to refund outstanding warrants in existence prior to January 9, 1911, we can not concur in the contention that the language of section 5 (Gen. Stat. 1915, § 2879) shows a manifest purpose to set these particular bonds apart by themselves and to leave them uncontrolled and unrestricted by any other statute. As already observed, the language of section 5 was intended merely to affect the issuance and validity of the refunding bonds. If the legislature had intended to exclude them from future estimate of the total bonded indebtedness of the county, doubtless it would have declared its intention in unmistakable terms.

2. A different question, however, arises with respect to bridge bonds issued by Wyandotte county, amounting to $1,-547,500. They were issued under the provisions of chapter 64

28—101 Kan.

of the Laws of 1909, section 1 of which declares that the bonds shall be "subject only to the limitations contained in this act. The amount of bonds so authorized to be issued shall not exceed the actual cost of such improvements." (Gen. Stat. 1915, § 750.) The defendant's contention is that this provision was intended to exclude the amount of such bridge bonds from the estimate in determining the limit of the county's indebtedness in the future. It is, we think, at least a matter of grave doubt whether the language just quoted is of itself sufficient to authorize the exclusion of the bridge bonds from consideration in future estimates of the county's indebtedness. There is force in the contention that this language is in effect the same as the provision noted in the refunding acts, *supra,* and that it should be construed merely as intended to legalize the bridge bonds themselves. However, the question need not be decided for the reason that we find another statutory provision (not referred to by either of the parties to this action) which, in our judgment, expressly excludes these particular bridge bonds from the estimate in ascertaining the limit of Wyandotte county's indebtedness as affecting the validity of bonds issued thereafter. The bridge bonds were issued under an obligation imposed upon Wyandotte county by chapter 64 of the Laws of 1909, "An act relating to public bridges." It applied to counties having an assessed valuation for taxation purposes of over ninety million dollars, and to certain conditions existing at that time in Wyandotte county alone. Section 1 of the act reads:

"Whenever in any county having an assessed valuation for taxation purposes of over ninety million dollars the board of directors of any drainage district organized under the laws of this state, under the powers vested in them, shall prescribe, regulate or fix the height of any public bridge located within said district or the length of spans and the location of piers or abutments of any such bridge, or shall locate harbor lines for or establish the channel of any stream within such district, and shall notify and request, in writing, the board of county commissioners to change, alter or reconstruct any such bridge or bridges to conform to such harbor lines, channel or requirements; or whenever in any county the secretary of war of the United States, or any other competent authority, shall request, order or direct, in writing, the reconstruction, raising or lengthening of any public bridge, or the spans thereof, over any navigable stream, or shall request, order or direct the reconstruction or relocation of the piers or abutments of any public

The State, *ex rel.*, v. Wyandotte County.

bridge over a navigable stream, or shall establish harbor lines or otherwise designate the channel for any navigable stream, and shall request, order or direct the reconstruction of bridges to conform thereto; the board of county commissioners of the county wherein such public bridge is located is hereby authorized and empowered to reconstruct such bridges and approaches thereto,.raise, lengthen and repair such bridges, and to reconstruct, remove and relocate the abutments and piers thereof, and to improve such bridges in any other respect required, and to do any and all acts necessary to conform to such requirements, in the manner hereinafter provided, and for the purpose of paying for such improvements may issue bonds of such county without the same being authorized by any election, and subject only to the limitations contained in this act. The amount of bonds so authorized to be issued shall not exceed the actual cost of such improvements." (Gen. Stat. 1915, § 750.)

For the purpose of paying for these alterations and improvements the board of county commissioners was empowered to issue the bonds without being authorized to do so by an election. The act was passed because of the peculiar conditions in Wyandotte county following the disastrous and unprecedented flood of 1903. The county, at enormous expense, had erected a number of bridges destroyed by the flood, and across that part of the Kansas river which is within the control of the war department of the United States government. Subsequently, and while the bridges were in excellent state of repair, it was found necessary to reconstruct and lengthen them under orders issued by the war department and by the Kaw Valley drainage board. As suggested in the defendant's brief, the "bonds were not issued by the board of county commissioners of its own volition or upon a vote of the people." If the question of their issuance had been submitted to a vote of the people it might not have carried; but the legislature recognized that an emergency existed and directed that the bonds be issued to meet the requirements of the drainage board and the orders of the war department. The act authorizing the issuance of the bridge bonds was passed March 11, 1909. At the same session of the legislature, and only six days prior thereto, the act fixing the limit of the indebtedness in counties, cities and school districts, upon which the state relies in this action, was passed. This is chapter 62 of the Laws of 1909, to which we have already referred. We have not examined the legislative history of the two acts, but the act authorizing the bridge bonds was a substitute for senate bill No. 301.

Chapter 62, limiting the creation of indebtedness, was senate bill No. 586. It is apparent that both acts were pending at the same time because section 1 of chapter 62 contains an express provision eliminating these bridge bonds from consideration in estimating the bonded indebtedness of the county. By section 1 the county is empowered to issue its bonds "in any sum not greater than one per cent, inclusive of all other bonded indebtedness, of the taxable property of such county, city or township, for the purpose of building or purchasing bridges, free or otherwise, and *exclusive of any bonds issued for the raising, lengthening, reconstructing or otherwise altering of any bridges over navigable streams to meet the requirements of the war department of the United States, or of any drainage district organized under the laws of the state.*" (Gen. Stat. 1915, § 623.)

Of course the two acts must be construed together. They harmonize perfectly. The legislative purpose was that the provisions of chapter 62 limiting the bonded indebtedness of the county to one per cent of its indebtedness should not apply to these bridge bonds which chapter 64 then pending directed and compelled the county to issue.

When it imposed the great ·burden of these bridge bonds upon the taxpayers of Wyandotte county the legislature had no intention that the county should thereby exhaust for a long period of years its power to incur further indebtedness in providing for other necessary improvements.

It follows that, while the bridge bonds are not to be counted in estimating the bonded indebtedness of Wyandotte county as affecting the validity of bonds issued subsequently, the judgment must be affirmed on the ground that the issuance of $400,000 courthouse .bonds would bring the total bonded indebtedness above the statutory limit.

The judgment is affirmed.