No. 25,867.

BOARD OF EDUCATION OF THE CITY OF GREAT BEND, *Plaintiff*, v. N. A. TURNER, as Auditor, etc., *Defendant*.

SYLLABUS BY THE COURT.

MANDAMUS—*Limitation on Issue of Bonds by Board of Education—Conflicting Statutes—Latest Expression of Legislature Regarded as Existing Law.* There is an irreconcilable conflict between the provisions of R. S. 10-301 and R. S. 72-1820 as to the limitation on the issuance of bonds by boards of education in cities of the second class, and as section 72-1820 is the latest expression of the legislature upon the subject it must be regarded as the existing law and operates to repeal the earlier provision to the extent of the repugnancy in the two acts, although both were incorporated in the revision of the General Statutes of 1923.

Original proceeding in mandamus. Opinion filed October 11, 1924. Judgment for the plaintiff.

*Bennett R. Wheeler, S. M. Brewster,* and *John L. Hunt,* all of Topeka, for the plaintiff.

*C. B. Griffith,* attorney-general and *W. C. Ralston,* assistant attorney-general, for the defendant.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an original proceeding in mandamus to compel the auditor of state to register certain school bonds, the issuance of which had been authorized at an election held in Great Bend, a city of the second class, and had been issued by the board of education of that city.

A question has arisen whether the issuance of such bonds is governed by R. S. 10-301 or R. S. 72-1820. Each provides a different limitation as to the amount of bonds that may be issued by the

board of education of a city of the second class, and because of that conflict the auditor declined to register the bonds presented. The amount of the bonds in question are in excess of the limitation prescribed by R. S. 10-301, but are well within the limitation laid down in R. S. 72-1820.

Looking first at section 10-301 it is seen that it was originally enacted in 1879, authorizing counties, cities, boards of education of cities, townships and school districts to compromise and refund their matured and maturing indebtedness of every kind and to issue bonds for that purpose, and it also provided that no municipality should increase its indebtedness beyond the amount of the refunding bonds issued until they were paid or liquidated. (Laws 1879, ch. 50, § 3.) The act was amended in 1891, limiting the funding of indebtedness to existing bonded debt that had been issued, and was outstanding at least two years, and except for the refunding of outstanding bonds, no bonds of any class or description should be issued by a county or township in excess of five per cent of the assessment for taxation, nor should there be issued any bonds by city, school district or board of education in excess of six per cent of such assessment, but provided that cities of the first class should be excepted from this limitation. (Laws 1891, ch. 163, § 2.) This act was again amended in 1893 in some particulars without changing the limitation as to the amount of bonds that might be issued.

In 1909, an act limiting the creation of indebtedness of municipalities was passed which provided that counties and townships should not exceed one per cent of the assessment for taxation and that cities except those of the first class and boards of education or school districts, might issue bonds up to the limitation of one and one-fifth per cent of the assessment. (Laws 1909, ch. 62, § 2.)

This later provision was incorporated in and forms a part of the revision of 1923 and is as follows:

"*Limitation with reference to tax assessment.* Except for the refunding of outstanding debt, including outstanding bonds and matured coupons thereof, or judgment thereon, no bonds of any class or description shall hereafter be issued by any county, township, city, board of education or school district where the total bonded indebtedness of such county or township would thereby exceed one per cent of the assessment for taxation, as shown by the last finding and determination by the proper board of equalization, or where the total bonded indebtedness of such city, school district or board of education would thereby exceed one and one-fifth per cent of such assessment; but this restriction shall not apply to cities of the first class." (R. S. 10-301.)

The origin of R. S. 72-1820 was a section of an act passed in 1876, providing that boards of education might issue bonds to purchase sites and erect buildings thereon or to fund bonded indebtedness of the district, but it contained no restriction or limitation of the kind in question. (Laws 1876, ch. 122, art. 11, § 24.)

This provision was amended in 1903 and it provided a limitation of four per cent of the assessment for taxation. (Laws 1903, ch. 434, § 1.)

The provision came before the legislature again in 1905, which changed the limitation by providing that the total indebtedness of the district should not be increased by an issue of bonds to an amount exceeding fifteen per cent of the authorized valuation of the district. (Laws 1905, ch. 398, § 1.)

The provision was reënacted changing the limitation so that in the issuing of bonds the total indebtedness should not be increased to an amount exceeding one and one-half per cent of the authorized valuation of the territory. (Laws 1909, ch. 62, § 7.)

In 1911 the act was again amended by substituting a limitation so that the total indebtedness should not be increased by the issuance of bonds beyond two per cent of the authorized valuation. (Laws 1911, ch. 260, § 1.)

In 1913 the limitation in question was raised to two and one-fourth per cent of the authorized valuation. (Laws 1913, ch. 270, § 1.)

The limitation was changed again in 1917 making it two and one-half per cent of the authorized valuation. (Laws 1917, ch. 272, § 1.)

In the Laws of 1919, chapter 264, section 1, the provision was amended in some particulars without changing the limitation on the amount of bonds to be issued.

At the special session of the legislature in 1920, an act was passed amending the provision in question and making the limitation three and three-fourths per cent of the authorized valuation. (Laws 1920, ch. 55, § 2.)

The last enactment was carried into the Revised Statutes and is as follows:

"*Bond Issues.* That whenever it shall become necessary for the board of education of any city of the second class to provide funds for the purchase of a school site or sites, or to erect a suitable building or buildings thereon, or to equip and furnish the same, to borrow money for such purposes the said board of education is hereby authorized and empowered to issue bonds in

the manner provided by law. No such bonds shall be issued until the question of issuing the same shall be submitted to a vote of the people, and a majority of the qualified electors who shall vote on the question at any election called for that purpose shall have declared by their votes in favor of issuing bonds. The total indebtedness of the said board of education shall not thereby be increased to an amount exceeding three and three-fourths (3¾) per cent of the assessed valuation of the territory within the jurisdiction of said board of education: *Provided,* That the boards of education of cities of the second class may issue at any time without such election a bond for a sum not greater than ten hundred dollars to raise money to pay for needful repairs on school buildings or heating plants for the public school buildings, if the state superintendent of public instruction shall approve in writing such issue. The issue of such bonds shall not exceed at any time an aggregate amount of the sum of five thousand dollars." (R. S. 72-1820.)

The limitation in the later section enacted in 1920 is the one which controls in the issuance of bonds involved in this proceeding. It contains the latest expression of the legislature in respect to the limitations imposed on boards of education of cities of the second class in the voting and issuance of bonds. R. S. 10-301 prescribes a limitation on counties, townships, cities, school districts, boards of education of cities, except in those of the first class. As to the boards of education it is provided that bonds shall not be issued by them where the total bonded indebtedness of the territory would thereby exceed one and one-fifth per cent of the assessment for taxation. The language of the act is somewhat obscure as to whether refunding bonds are to be considered in estimating the outstanding indebtedness of the municipality, but it has been determined that the terms of the statute do not warrant the exclusion of such bonds from the count. (*The State, ex rel., v. Wyandotte County,* 101 Kan. 430, 166 Pac. 520.) The later act is in irreconcilable conflict with this limitation, as it affirmatively provides that boards of education of cities of the second class may issue bonds to buy sites and erect school buildings thereon where the total indebtedness shall not be increased to an amount exceeding three and three-fourths per cent of the assessed valuation of the territory.

There is an obvious repugnance between the two acts as to the limitation on the issuance of bonds by a board of education of a city of the second class, and in that situation it follows that the later act operates to repeal the earlier one, at least to the extent of the repugnancy. The earlier one covers more municipalities and more subjects than the later one, and it is unnecessary to determine

that the earlier provision was affected or repealed except as to the provisions that are positively inconsistent and irreconcilable. It is true that implied repeals are not favored, and courts should not hold an act to be entirely repealed by a later one unless it covers the entire subject matter and appears to have been the legislative intention to completely abrogate and supersede all provisions of the prior act. There may arise conditions and circumstances where there is room for application of parts of the prior act, hence we go no farther in this decision than to hold that the former act is repealed to the extent of the repugnancy with the later one. The later enactment clearly evinces an intention by the legislature that the earlier restriction should not apply to boards of education of second-class cities, and as both provisions cannot stand together, effect should be given to the intention of the law-making power. The simultaneous inclusion of both acts in the revision of 1923, which was adopted and approved as a single measure, did not change the status of the conflicting acts. They were placed in the revision without change and must be construed as continuations of such laws and not as new enactments. (R. S. 72-1820.)

It may be assumed that the repugnancy in the acts was overlooked, and in construing them resort must be had to their legislative history and effect given to the latest expression of the legislature on the subject. The inclusion of conflicting provisions in the recent revision of the General Statutes was fully considered in *Arkansas City v. Turner*, ante, p. 407, 226 Pa. 1009, and it was determined that the later enactment so far as it is repugnant to the former is to be regarded as the existing law and the earlier one to the extent of the repugnancy to be repealed by implication. See, also, *The State, ex rel., v. Ryan*, ante, p. 208, 225 Pac. 1043.

Judgment must go in favor of the plaintiff.