THE STATE OF KANSAS, *ex rel. Joseph Taggart, as County Attorney, etc., Appellant,* v. THE CITY OF KANSAS CITY *et al., Appellees.*

No. 17,322.

SYLLABUS BY THE COURT.

1. STATUTORY CONSTRUCTION—*Reënactment—Intermediate Statute Limiting Original Act Not Repealed.* An act which limits the operation of an earlier one is not repealed by implication by a reënactment of the original statute, incidental to its amendment in some other respect, but continues in force as a limitation upon the amended statute.

2. CITIES AND CITY OFFICERS—*Limitation on Bonded Debt— Statute Exempting Waterworks Bonds Not Repealed.* Where an act authorizes a city to issue bonds for waterworks, and provides that their issuance shall not be affected by an earlier statute forbidding the creation of a bonded debt in

excess of a stated percentage of the property subject to taxation, a subsequent reënactment of such earlier statute, incidental to an amendment merely changing the percentage, does not by implication repeal the provision exempting waterworks bonds from the limitation.

3. ——— *Limitation on Indebtedness—Bonds Issued Contemporaneously—Priority.* Assuming that under the statutes above described waterworks bonds should ordinarily be included in estimating the amount of outstanding indebtedness for the purpose of ascertaining whether the statutory five per cent limit has been reached, if the city's financial condition is such that two sets of bonds, one for waterworks and one for a city hall, may lawfully be issued by giving the latter priority in time, both may be issued at the same time without violating the statute; and where under such circumstances city-hall bonds are first voted and first authorized by ordinance, their issuance must be deemed substantially contemporaneous with that of waterworks bonds which bear the same date and mature at the same time, but which are actually executed a few weeks earlier.

Appeal from Wyandotte district court. Opinion filed November 5, 1910. Affirmed.

*Joseph Taggart*, county attorney, and *James M. Meek*, assistant county attorney, for the appellant.

*Richard J. Higgins*, for the appellees.

The opinion of the court was delivered by

MASON, J.: The city of Kansas City, Kan., was about to issue bonds to the amount of $100,000 for the purpose of improving its waterworks, and to the amount of $83,000 for the erection of a city hall, when an injunction was asked in the name of the state restraining such issuance as being forbidden by the statute (Laws 1909, ch. 62, § 6, Gen. Stat. 1909, § 1069) limiting the city's bonded debt to five per cent of the assessed value of the property subject to taxation. An injunction was refused, and the state appeals.

The statute cited, so far as here important, reads:

"At no time shall the bonded indebtedness of any city of the first class having a population of fifty thousand

The State v. Kansas City.

or more, except for bonds issued for special improvements and for sewers, for which a special tax is levied upon the property improved, exceed five per cent of the assessed value of all the taxable property within said city, as shown by the assessment books of the previous year."

The value of the city assessment roll for 1909 was $71,341,895, so that the limit of the general bonded indebtedness is $3,567,094.75. The amount of bonds outstanding is already slightly in excess of this, being $3,569,970.43. The waterworks bonds, however, are sought to be issued under a statute which contains this provision:

"None of the restrictions and limitations respecting the amount of city indebtedness contained in any of the statutes of the state of Kansas shall apply to or in any way affect the issuance of the bonds authorized by this act." (Laws 1908, ch. 33, § 16, Gen. Stat. 1909, § 1204.)

The appellant argues that this section should not control because it was enacted in 1908, while the statute imposing the limitation was passed in 1909. The act of 1909, however, was merely an amendment of an earlier act, which it changed in no respect except by reducing the percentage named—a change plainly occasioned by the adoption of a new method of assessment by which assessed values were expected to be, and in fact were, greatly increased. Obviously the legislature had no intention of applying the limitation to any class of bonds that had previously been exempt from its operation.

"The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such provisions, and not as a new enactment." (Gen. Stat. 1868, ch. 104, § 1, subdiv. 1, Gen. Stat. 1909, § 9037, subdiv. 1.)

"In case a statute is reënacted and some of the provisions of the old law are omitted from the new, this constitutes a repeal of the omitted provisions, but the reënacted provisions are to be read as part of the earlier statute and not of the reënacted one, if they conflict with another statute passed after the first but before

28—83 KAN.

the last act; and therefore they do not repeal by implication the intermediate act." (26 A. & E. Encycl. of L. 735.)

"A later law, which is merely a reënactment of a former, does not repeal an intermediate act which qualifies or limits the first one, but such intermediate act will be deemed to remain in force, and to qualify or modify the new act in the same manner as it did the first." (*Gaston v. Merriam,* 33 Minn. 271, 283.)

Inasmuch as the statute is still in force which permits waterworks bonds to be issued regardless of the amount of bonded debt already outstanding, no objection appears to the issuance of further bonds of that character.

The question whether the city may rightfully issue new bonds for the erection of a city hall is more difficult. According to the letter of the statute such action is forbidden, for the total bonded debt now outstanding already exceeds five per cent of the assessment roll. But it is claimed that in ascertaining whether the statutory limit has been reached waterworks bonds should be excluded. The statute does not say this in terms, but such is claimed to be the combined effect of the two acts. The argument is that the legislature, having opened a way for the city to issue bonds for waterworks after having created a bonded debt amounting to five per cent of the value of the taxable property, must have intended to give it a uniform capacity to incur an indebtedness of that amount for other purposes. Essentially similar provisions have been given that construction. (*Los Angeles v. Hance,* 137 Cal. 490; *Stone v. City of Chicago,* 207 Ill. 492; *Austin v. Seattle,* 2 Wash. 667; *Faulkner v. Seattle,* 19 Wash. 320; *Graham v. Spokane,* 19 Wash. 447.) In the California case cited the city charter provided that:

"The indebtedness of said city must not exceed, in the aggregate, the sum of $2,000,000;  .  .  .  provided, that for the purpose of acquiring and establishing a system of waterworks  .  .  .  or of  .  .  .  sewage  .  .  .  a further indebtedness may be incurred." (p. 491.)

The court said:

"We think it clear that under this section the limitation of indebtedness to $2,000,000 includes only indebtedness for general purposes other than for acquiring and constructing waterworks and a system of sewerage; and that when, at any time, the question of such limitation is to be determined no former indebtedness for water or sewage is to be considered." (p. 491.)

In a note by Mr. Farnham on a related subject it is said:

"The limitations are put upon municipal indebtedness as a check upon the enthusiasm often excited by an aggressive campaign for public improvements, or to protect the taxpayer against the effect of his apathy in failing to protest against a proposed contract about to be entered into by the municipal authorities. The limitation . . . should be strictly construed, so as not to impose any more restriction than is necessary. And such has been the policy of the courts." (59 L. R. A. 607.)

The contrary view is taken in *State ex rel. v. Wilder,* 197 Mo. 1, and in *Adams v. East River Savings Institution,* 65 Hun [72 N. Y. Supr. Ct.] 145. In the Missouri case the court held that notwithstanding an amendment permitting a city, for the purpose of procuring waterworks, to become indebted beyond the limit imposed by the constitution, such indebtedness should be counted in ascertaining whether such limit had been reached. Three of the seven justices, however, dissented, saying:

"The purpose—the main purpose—the only purpose of the amendment . . . was to increase the taxing power of the cities embraced in its terms to enable them to own their waterworks and lighting plants; that is what the general assembly had in mind when it proposed the amendment and it is what the people had in mind when they adopted it. The conferring of taxing power was the dominant thought in the amendment, the order in which the city might incur its obligations was overlooked, was not thought of, it was of no importance and at most it can now be deemed as an acci-

dent of only secondary consideration, yet if we should adopt the strict literal construction contended for by the respondent we would allow the altogether unimportant accidental fact to defeat the main purpose of the amendment. This would be misconstruction." (p. 13.)

It is not necessary at this time to decide whether ordinarily waterworks bonds should be counted in estimating the debt of Kansas City for the purpose of applying the five per cent limitation of the act of 1909. Because of the special circumstances out of which the present case has arisen it may be decided without determining that question. On November 2, 1909, at an election held for that purpose, thirty-year bonds to the amount of $200,000 were voted for the erection of a city hall. On July 1, 1910, an ordinance was passed for their issuance, which provided that they should bear that date and draw interest from that time. Under this authority bonds have already been issued to the amount of $117,000, and it is the remainder of $83,000 which is now in controversy. When this ordinance was passed the total bonded debt was $3,052,970.43, or $514,124.32 less than five per cent of the value of the property subject to taxation, so that the power of the city to create the new debt was then unassailable, and if the bonds had been at once executed and sold no point could have been made against them. But on July 14, 1910, another ordinance was passed authorizing a $500,000 issue of waterworks bonds, in accordance with an election which had been held on March 10, 1910, such bonds also to be dated July 1, 1910, and to run thirty years. Of this amount $400,000 has already been executed, and this, if it is to be counted for that purpose, when added to the $117,000 of city-hall bonds bearing the same date, exhausts the debt-making capacity of the city, thereby preventing it from issuing any more bonds excepting for waterworks. This statement of the situation makes it clear that, whatever the general rule may be, these particular waterworks bonds

ought not to be taken into account in determining the power of the city to sell these particular city-hall bonds. The city-hall bonds were the first voted and the first authorized by ordinance. No question could have arisen concerning them had it not been for the circumstance that in the actual marketing of the securities those subsequently authorized were disposed of a little more rapidly than the others. Possibly the bonds may be deemed to have been "issued," for the purposes of the statute involved, on the first of July. Such a construction accords with one of the recognized uses of the term. (*Gage v. McCord*, 5 Ariz. 227, 233; *Yesler v. Seattle*, 1 Wash. 308, 322.) But even treating the bonds as issued only when they are executed and sold, we think the right of the city to complete the transaction it has undertaken is clear. It had the unquestioned power on July 1 to issue both the $500,000 of waterworks bonds and the $200,000 of city-hall bonds, by making the latter prior in time. In this situation, if both sets of bonds had been issued upon the same day the spirit of the law would not have been violated, and all would have been valid. Only by an unwarrantable adherence to the bare letter of the statute could any objection have been made to them. Inasmuch as the city-hall bonds were first voted and first authorized, and were presumably sold in the ordinary course of business as the funds were needed in the progress of the improvement to pay for which they were issued, under a fair and reasonable interpretation of the statute their issuance must be regarded as legal, because it was practically contemporaneous with that of the waterworks bonds, which bore the same date and matured at the same time.

The judgment is affirmed.