No. 22,376.

AGNES RITCHIE, *Appellee,* v. MARTIN AHLSTEDT, as County
Treasurer of Saline county, *Appellant.*

SYLLABUS BY THE COURT.

1. TAXATION—*Deduction of Debts from Credits—Both Debts and Credits
   Secured by Lien on Real Estate—Statute Construed.* The statute au-
   thorizes a taxpayer to deduct indebtedness owed by him from the
   amount of his "credits," on which he would otherwise be required to
   pay taxes. Originally the statute contained a provision that the word
   "credits" as so used should not include demands secured by lien on real
   estate. *Held,* that the striking out of that definition from the statute
   showed a legislative purpose to allow notes owing by the taxpayer to
   be deducted from notes owned by him, although both be secured by
   lien on real estate.

2. SAME—*Deduction of Debts from Credits—Uniformity of and Equality
   in Taxation—Statute Constitutional.* A statute allowing a taxpayer to
   deduct indebtedness which he owes from indebtedness owing to him in
   order to arrive at the amount for which he shall be liable to taxation on
   account thereof, is not rendered obnoxious to the constitutional rule
   of uniformity and equality by the fact that no such deduction is al-
   lowed with respect to other personal property, or to realty.

3. SAME—*Uniformity of Taxation—Deduction Relating to Banks.* Such
   statute is not rendered obnoxious to the requirement of uniformity
   and equality of treatment in matters of taxation by the provision of
   the constitution requiring all the property of banks, "without deduc-
   tion," to be taxed, the words quoted having reference to the two-
   hundred-dollar exemption allowed to heads of families.

Appeal from Saline district court; DALLAS GROVER, judge.
Opinion filed December 6, 1919. Affirmed.

*Richard J. Hopkins,* attorney-general, *J. K. Rankin, Win-
field Freeman,* assistants attorney-general, and *W. B. Crowther,*
county attorney, for the appellant.

*David Ritchie,* of Salina, for the appellee.

The opinion of the court was delivered by

MASON, J.: On March 1, 1918, Agnes Ritchie owned a
promissory note for $13,550, and was indebted upon a note for
$4,000 signed by herself. Each note was secured by a mort-
gage on real estate. She owned no other taxable personal

property, and in making her tax statement for that year claimed the right to deduct the amount she was owing from the amount owed to her, thus rendering herself liable to the payment of taxes on but $9,550. To enforce this right, which was disputed by the taxing officers, she tendered payment of the amount due on this basis, and brought an action to enjoin the county treasurer from issuing a warrant for the collection of any larger sum. Judgment was rendered in her favor, and the defendant appeals.

1. A territorial statute authorized the taxpayer to deduct his indebtedness from the value of his personal property of every sort, and pay only upon the difference between what he had and what he owed. (Laws 1860, ch. 114, §§ 8, 9.) This act remained in force until 1866, when it was superseded by a provision authorizing the taxpayer's indebtedness to be deducted only from his "credits" (Laws 1866, ch. 118, § 4), which were defined for the purposes of the statute as "every demand for money, labor, or other valuable thing, whether due or to become due, but not secured by lien on real estate." (Id. § 2.) These provisions were preserved in the revision of the tax law in 1876 (Laws 1876, ch. 34, §§ 6, 2; Gen. Stat. 1901, §§ 7508, 7503) and retained until 1907. Then the section in which the word "credits" was defined was amended, the definition being omitted (Laws 1907, ch. 408, § 1; Gen. Stat. 1915, § 11150), the original section being expressly repealed (Laws 1907, ch. 408, § 40), and the clause allowing indebtedness to be deducted from "credits" was retained without change. (Gen. Stat. 1915, § 11157.)

Manifestly in so defining "credits" (for the purpose of the act in which it was used) as to exclude claims secured by lien on real estate, the legislature meant to give to the word a different meaning from that which it would otherwise convey. It saw fit "for some reason" (*Lappin & Scrofford v. Commissioners of Nemaha County,* 6 Kan. 403, 411) to except from the term a class of demands which would ordinarily fall within it. The reason is not material; it may have been because a mortgagee is deemed to have an interest in the mortgaged realty, or because a note secured by real estate was regarded as too certain of payment to be the subject of setoff. When the definition which gave an exceptional meaning to the word

was stricken out of the statute, its normal significance was restored. A sum of money owing to one, upon which he is liable for taxes (for illustration, a book account), is obviously a "credit" against which he is entitled to set off a similar demand against himself. The circumstance that a note has been given in each instance does not affect the matter, nor (in the absence of a special statutory provision) does the further fact that each note is secured by a lien on realty. While a mortgage is regarded as transferring an interest in the real estate it covers, it merely operates to render more certain the ultimate payment of the note which it secures— it guarantees that the financial responsibility of the maker at the time it is given shall not be impaired by the realty being subjected to demands having priority to that of the holder of the note. A note that is certain to be paid in any event is not rendered more valuable by the fact that it is secured by a mortgage. Whatever the security, the note is merely evidence of the existence of a debt—it is a credit owned by the payee or holder. We think that according to the terms of the statute the plaintiff was required to pay taxes only upon the difference between what was owing to her and what she owed, that is, upon $9,550.

2. It is contended, however, that the provision of the state constitution requiring a uniform and equal rate of assessment and taxation (Art. 11, § 1) is violated by a statute which authorizes debts owed by the taxpayer to be deducted from one kind of property and not from another. A plausible argument can doubtless be made in support of the proposition that assuming the amount of taxes for which one is liable should be measured by the value of the property he owns, it should be based upon his net worth, and that inequality necessarily results unless he is allowed to set off everything he owes against everything he owns. That view, however, is not supported by any adjudication. In one instance it has been held in an advisory opinion that to allow indebtedness to be deducted from one class of property and not from all violates a constitutional requirement of equality, and that such deduction is in effect an exemption (*In re Assessment and Collection of Taxes*, 4 S. D. 6) ; and the deduction of indebtedness from money and credits has been held inadmissible on similar

grounds. (*Exchange Bank of Columbus v. Hines,* 3 Ohio St. 1, 22, 23; see, however, *Treasurer v. Bank,* 47 Ohio St. 503.) But the rule generally accepted is that deductions may be permitted either from all personal property or from credits alone. (37 Cyc. 744; 1 Cooley on Taxation, 3d ed., 269-273; *Stumpf v. Storz,* 156 Mich. 228.)    It is recognized everywhere that absolute equality in apportioning the burden of taxation is an unattainable ideal.    So long as a taxpayer is allowed to deduct his indebtedness from any class of property and not from all, the deduction of the amount he owes from the amount that is owed him seems a natural and proper application of the principle upon which the practice is founded.    In the textbook above cited Judge Cooley said of deductions on account of indebtedness:

"The allowance is not in any proper sense an exemption, but is made by way of reaching the just amount of taxable property." (p. 270.)

3. It is said in Gray on Limitations of Taxing Power (§ 1398) that the requirement of equal treatment seems to prohibit deductions for indebtedness in this state by reason of the following section of our constitution:

"The legislature shall provide for taxing the notes and bills discounted or purchased, moneys loaned, and other property, effects, or dues of every description (without deduction), of all banks now existing, or hereafter to be created, and of all bankers; so that all property employed in banking shall always bear a burden of taxation equal to that imposed upon the property of individuals." (Art. 11, § 2.)

The suggestion appears to be that this provision forbids to banks any deduction on account of indebtedness, and consequently none can be allowed to any taxpayer.    The provision quoted was adopted practically without change from the constitution of Ohio.    The words "without deduction" had already been interpreted by the supreme court of that state as relating to the exemption of personal property to the amount of two hundred dollars permitted by the preceding section, the court saying:

"The deduction here inhibited amounts simply to an express denial to the banks of the deduction allowed in the preceding section by the exemption in favor of individuals, and has reference to it." (*Exchange Bank of Columbus v. Hines,* 3 Ohio St. 1, 30; see, also, p. 46.)

The same court has upheld a statute authorizing a bank to deduct certain obligations in arriving at its taxable credits.

(*Treasurer v. Bank,* 47 Ohio St. 503.)   In our constitution, as
in that of Ohio, the section requiring all the property of banks
to be taxed "without deduction" immediately follows that per-
mitting in some cases an exemption of two hundred dollars'
worth of personal property, and, especially in view of the Ohio
decision, the words quoted must be regarded as having refer-
ence to that provision, and being intended to make it certain
that no such exemption or deduction was to be allowed. to
banks.   Ever since the organization of the state the indebted-
ness of the taxpayer has been taken into account in determin-
ing the amount of credits on which he shall be assessed.   A
very clear showing would be required to justify a condemna-
tion of the practice on constitutional grounds at this time.
We find no serious difficulty in holding the statute to be valid.

The judgment is affirmed.