# JULY TERM, 1924.

### PRESENT:

Hon. WILLIAM A. JOHNSTON, Chief Justice.
Hon. ROUSSEAU A. BURCH,
Hon. HENRY F. MASON,
Hon. JOHN MARSHALL,          Justices.
Hon. JOHN S. DAWSON,
Hon. WILLIAM W. HARVEY,
Hon. RICHARD J. HOPKINS,

No. 25,775.

The City of Arkansas City, *Plaintiff,* v. Norton A. Turner, State Auditor, *Defendant.*

#### SYLLABUS BY THE COURT.

1. Conflicting Statutes—*Last Expression of Legislature Prevails.* Where successive acts of the legislature covering the same subject matter are in irreconcilable conflict with each other, the one which is the last expression of the will of the legislature prevails.

2. Same—*Limitation of Bonded Indebtedness—Conflicting Statutes—Later Enactment Regarded as Existing Law.* Where conflicting and irreconcilable provisions of prior legislative acts are included in a revision and codification of the general statutes, the legislative history of the separate conflicting acts should be traced, and the later enactment is to be regarded as the existing law, and the older of the conflicting and repugnant provisions, although carried forward into a revision of the general statutes which was adopted and approved by the legislature, is to be considered as repealed by implication.

3. Same—*R. S. 10-301 and R. S. 10-303 Irreconcilable—R. S. 10-301 Repealed—R. S. 10-303 Existing Law.* Sections 10-301 and 10-303 of the Revised Statutes of 1923, both of which prescribe maximum limitations of bonded indebtedness, are in irreconcilable conflict, and as section 10-303 was the latest deliberate expression of the will of the legislature in enacting separate laws on that particular subject matter, such section 10-303 must prevail, and it altogether supersedes and repeals section 10-301, notwithstanding it was carried forward into the official revision and codification of the General Statutes of 1923.

Original action in mandamus. Opinion filed June 16, 1924. Writ allowed.

Arkansas City v. Turner, *State Auditor.*

*L. C. Brown,* of Arkansas City, *Justin D. Bowersock,* and *Robert B. Frizzell,* both of Kansas City, Mo., for the plaintiff.

*Charles B. Griffith,* attorney-general, and *W. C. Ralston,* assistant attorney-general, for the defendant.

The opinion of the court was delivered by

DAWSON, J.: This is an original action in mandamus to require the state auditor to register a proposed issue of bonds to pay for certain internal improvements in Arkansas City. The plaintiff is a city of the second class, having taxable property within its limits aggregating $11,905,520 in assessed value; the city's aggregate bonded debt is $2,238,717.21, of which sum $1,576,046.77 is for improvements to be paid for eventually by the property particularly benefited thereby, and the remainder, $662,670.44, binds the city at large and is to be paid by general taxation. The proposed issue of bonds is for repaving certain streets and is for the sum of $38,-209.64, and it seems to be agreed that all proceedings leading up to this proposed issue are regular in all respects except on the point that it may violate R. S. 10-301, which reads:

"Except for the refunding of outstanding debt, including outstanding bonds and matured coupons thereof, or judgment thereon, no bonds of any class or description shall hereafter be issued by any county, township, city, board of education or school district where the total bonded indebtedness of such county or township would thereby exceed one per cent of the assessment for taxation, as shown by the last finding and determination by the proper board of equalization, or where the total bonded indebtedness of such city, school district or board of education would thereby exceed one and one-fifth per cent of such assessment; but this restriction shall not apply to cities of the first class."

On account of this statutory provision, the auditor hesitates to register the bonds. Of course the aggregate bonded indebtedness of the plaintiff city is far in excess of one and one-fifth per cent of the city's total assessed valuation. It is in fact nearly 19 per cent. But there are some other pertinent provisions of statute. R. S. 10-303 reads:

"At no time shall all the bonded indebtedness of any city of the second or third class, for all purposes, exceed fifteen per cent of the assessed value of all the taxable property within such city as shown by the assessment books of the year next previous to the one in which a new issue of bonds is proposed to be made: *Provided,* That bonds issued to pay the cost of improvements for which a special tax is levied upon the property improved and bonds issued to pay the cost of improvement of intersections of streets, alleys and avenues, and that portion of the street immediately in front of city property,

and bonds issued for general sewers, shall not be included in estimating said bonded indebtedness: *Provided further,* That the total bonded indebtedness of any such city for all purposes shall at no time exceed twenty-five per cent of the assessed value of all the taxable property within such city as shown by the assessment books of the year previous to the one in which a new issue of bonds is proposed to be made."

The conflict between R. S. 10-301 and R. S. 10-303 is manifest and apparent. Nor by any logic can this conflict be reconciled. One statute would limit the aggregate bonded debt to 1.2 per cent of the assessed valuation of the city, the other to 25 per cent. It is therefore necessary that we delve below the fact that they both appear in the Revised Statutes of 1923, so as to determine their proper relative potency as shown by their legislative history prior to the revision. R. S. 10-301 is part of an old statute having its inception in section 3, chapter 50, Laws of 1879. This section was amended by section 2, chapter 163, Laws of 1891, and again amended by section 1, chapter 113, Laws of 1893, and still later amended by section 2, chapter 62, Laws of 1909. R. S. 10-301 is but a fragment of this much-amended section. It should be noted that it last received the particular attention of the legislature in 1909. Turning next to the legislative history of R. S. 10-303, it seems to have originated in 1913 by enactment in section 1, chapter 126, Laws of 1913. It was amended by section 1, chapter 22, Laws of Special Session 1920, and it appears in R. S. 10-303 as thus amended in 1920. It is therefore clear that the latter section contains the last deliberate expression of the will of the legislature on the subject of setting a maximum limitation on the bonded debt of a city of the second class.

It is an elementary rule of statutory construction that where a manifest conflict between two statutes cannot be reconciled so as to give reasonable operative effect to both, the later enactment, as the last expression of the legislative will, controls, and the earlier enactment is deemed to have been repealed by implication.

"Rule followed that older statutes must be read in the light of later legislative enactments, and are subordinated thereto and must be harmonized therewith. Otherwise the older statutes must give way to the later enactments, and by implication are repealed thereby." (*In re Moseley's Estate,* 100 Kan. 495, syl. ¶ 5, 164 Pac. 1073.)

In 25 R. C. L. 914 it is said:

"If an act is so repugnant to, or so contradictory of, or so irreconcilably in conflict with, a prior act that the two acts cannot be harmonized in order to

effect the purpose of their enactment, the later act operates, without any repealing clause, as a repeal of the first to the extent of the irreconcilable inconsistency. A later statute without any repealing clause must be held to repeal an earlier one where under no reasonable hypothesis can the provisions of both be construed as coexisting."

. It would therefore follow that R. S. 10-303 is the controlling and pertinent provision of law governing the proposed issue of bonds unless the reënactment of both sections in the revision of 1923 alters this conclusion. But that revision itself provides:

"The provisions of the Revised Statutes, so far as they are the same as those of prior laws, shall be construed as a continuation of such laws, and not as new enactments." (R. S. 77-112.)

"The arrangement and classification of the several sections of the Revised Statutes have been made for the purpose of convenience and orderly arrangement, and therefore no implication or presumption of a legislative construction is to be drawn therefrom." (R. S. 77-113.)

In *The State, ex rel., v. Ryan, Secretary of State,* 116 Kan. 208, 210, 225 Pac. 1043, mandamus was sought to compel that official to deliver a copy of the statutes to each division of the district court of Wyandotte county under a statute of 1920 as amended in 1921 and included in the revision of 1923, but which was out of harmony with the new statutory provisions promulgated by the legislature of 1923 dealing with the subject matter so comprehensively as to leave no room for the earlier legislation to operate. It was said:

"So far as there may be a conflict the later enactment relating specifically to the duties of the secretary of state in respect to the volumes here in question must prevail. The reënactment in 1921 of the provision of the law of 1920 regarding the furnishing of books to the several court divisions, incidental to the amendment of the section in other respects, did not give it a new status with respect to the time of its origin. The part of the statute which remained unchanged is regarded as having been in force from 1920 (R. S. 77-201) and .is subject to implied repeal by statutes of a later date. (*The State v. Kansas City,* 83 Kan. 431, 111 Pac. 493; *Wilson v. Edwards County,* 85 Kan. 422, 116 Pac. 614.)" (p. 210.)

The logic of the above case leads to the conclusion that in construing these conflicting and irreconcilable provisions of statute, R. S. 10-301 and R. S. 10-303, the fact that they appear in the official revision of 1923 as reënactments must be disregarded. When their separate legislative history is traced, it clearly appears that R. S. 10-301, being the older statute, is superseded by R. S. 10-303 as the latest deliberate declaration of the will of the legislature. The question presented is not new. In *County Com'rs Hillborough Co. v. Jackson,* 58 Fla. 210, the board of county commissioners brought

Arkansas City v. Turner, *State Auditor.*

mandamus proceedings to compel the sheriff to permit one Wool-heaver to enter the jail to feed the prisoners, pursuant to a contract under sanction of an act of 1881.   Under a statute of 1897 the duty and privilege of feeding the prisoners at county expense was imposed and conferred on the sheriff.   The commissioners who compiled the General Statutes of Florida for 1903 had been authorized "to revise, simplify, arrange and consolidate all the public statutes of the state of Florida which are general and permanent in their nature, and which shall be in force in this state at the time such commissioners shall make their final report."   No one except a trained lawyer can realize what a Trojan task is involved in such an undertaking, and as it has to be done by fallible men, some repugnancies and conflicts in existing statutes are not unlikely to escape detection.   And so it transpired that the repugnant acts of 1881 and 1897 crept into the Florida revision of 1903.   But the supreme court ruled:

"The commissioners who compiled the General Statutes under the act of 1903 were authorized 'to revise, simplify, arrange and consolidate all the public statutes of the state of Florida, which are general and permanent in their nature, and which shall be in force in this state at the time such commissioners shall make their final report.'   Under this authority, if repugnant provisions of prior statutes are compiled and adopted in the General Statutes it must be presumed that the repugnancy was overlooked and that it was the intention of the compilers and of the legislature to bring forward the latest expression of the legislative will.

"Where there are two conflicting sections of a general compilation or code of statute laws, that section should prevail which is derived from a source that can be considered as the last expression of the lawmaking power in enacting separate statutes upon the same subject.

"Sections 976 and 4108 of the General Statutes of the state of Florida are conflicting, and as section 976 was the latest expression of the legislature in enacting separate laws upon the same subject, such section 976 must prevail, even though section 4108 appears in the General Statutes subsequent in place and numerical order." (Syl. ¶¶ 1, 2, 3.)

The rule is stated in 1 Lewis' Sutherland's Statutory Construction, 2d ed., § 281:

"Where two statutes *in pari materia,* originally enacted at different periods of time, are subsequently incorporated in a revision and reënacted in substantially the same language, with the design to accomplish the purpose they were originally intended to produce, the times when they first took effect will be ascertained by the courts, and effect will be given to that which was the latest declaration of the will of the legislature, if they are not harmonious. An existing statute is not to be considered as original because it is embodied in a revision, and therefore is not to be construed on the theory that none of

its provisions had been in effect prior thereto. The appearance of such a statute in the form and body of a revision has no other effect than to continue it in force."

The reported decisions are all to the same effect: *Mobile Savings Bank v. Patty,* 16 Fed. 751; *Lamar v. Allen,* 108 Ga. 158, 165;. *Stephens v. The State,* 70 Tex. Crim. App. 565, 568, 569; *Gaines v. Marye,* 94 Va. 225, 227, 228; 1. Lewis' Sutherland's Statutory Construction, 2d ed., §§ 271, 281.

The writ is allowed.