No. 33,000

THE STATE OF KANSAS, ex rel. ARTHUR J. STANLEY, JR., as County Attorney of Wyandotte County, and the BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WYANDOTTE, *Plaintiffs*, v. GEORGE ROBB, as State Auditor, *Defendant*.

(55 P. 2d 815)

Opinion filed March 21, 1936.

*Arthur J. Stanley, Jr., George H. West, Russell C. Hardy* and *Alton H. Skinner,* all of Kansas City, for the plaintiffs.

*Clarence V. Beck,* attorney general, and *Theo. F. Varner,* assistant attorney general, for the defendant.

*W. B. Crowther,* on behalf of the State Tax Commission, *Chester Stevens* and *W. D. Kimble,* both of Independence, as *amici curiae.*

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in mandamus seeking to direct the state auditor to register an issue of Wyandotte county poor-relief bonds dated March 1, 1936, in the sum of $250,000. Defendant has declined to register the bonds for the reason that if issued the bonded debt of Wyandotte county would exceed the limitation prescribed by R. S. 10-301. The legal question is whether this last-mentioned section applies to the bonds the county seeks to have registered. The bonds in question have been issued under chapter 192 of the Laws of 1935, the title of which reads:

"AN ACT relating to the public relief and assistance to the poor and unemployed; authorizing the levying of taxes and the issuance of bonds by the counties for the relief of the poor and unemployed, imposing certain conditions and restrictions, and providing certain procedure."

The first section of the act authorizes a board of county commissioners, under certain circumstances, to levy an additional tax for the relief of the poor, but since no tax question is raised here we need not further notice this section. The pertinent portion of the second section of the act reads:

"That if at any time prior to March 1, 1937, it appears to the board of

county commissioners that additional revenue will be needed for the relief of the poor and destitute, the board of county commissioners shall have the power to issue bonds to provide funds for the relief of the poor and destitute in amounts for each year as follows: An amount in 1935 not exceeding one third of one percent, in 1936 an amount not exceeding one half of one percent, in 1937 an amount not exceeding one tenth of one percent, of the assessed valuation of the county in the previous year: *Provided,* That the proposal to issue bonds shall have been submitted to the state tax commission and by the state tax commission approved. . . . The money derived from the sale of such bonds shall be used only for the purposes as stated in section 3 of this act. The revenue derived from the sale of bonds in this act may be in addition to any amount provided for in the budget of the county. . . ."

The third section provides that moneys raised by the tax levy or a bond issue, provided for in the act, shall be kept in a separate fund to be known as "public assistance fund," and shall be used for the relief of the poor.

It is conceded that the proposal to issue the bonds was submitted to the state tax commission and by it considered and approved; also that all other steps necessary to be taken under the act have been performed, and that the amount of the issue is within the limitations provided by the act under which the bonds are issued. The sole question presented is whether bonds issued under the act are to be counted or taken into consideration in determining the amount of bonds which may be issued by a county within the limitations prescribed by R. S. 10-301, which reads:

"Except for the refunding of outstanding debt, including outstanding bonds and matured coupons thereof, or judgment thereon, no bonds of any class or description shall hereafter be issued by any county, township, city, board of education or school district where the total bonded indebtedness of such county or township would thereby exceed one percent of the assessment for taxation, as shown by the last finding and determination by the proper board of equalization, or where the total bonded indebtedness of such city, school district or board of education would thereby exceed one and one fifth percent of such assessment; but this restriction shall not apply to cities of the first class."

This statute was last revised and reënacted in 1909 (Laws 1909, ch. 62, sec. 2.) In *Arkansas City v. Turner, State Auditor,* 116 Kan. 407, 226 Pac. 1009, it was held to have been superseded and repealed by R. S. 10-303 insofar as applied to bonds issued by cities of the second and third class. In *Board of Education v. Turner, Auditor,* 116 Kan. 735, 229 Pac. 74, it was held to have been superseded and repealed by R. S. 72-1820 to the extent of the repugnancy in the two acts, and in *Woodson v. School District,* 127 Kan. 651, 657, 274 Pac.

728, it was held to have been superseded by R. S. 72-2001, so far as it pertains to the limitation for bonded indebtedness of a common-school district. So, at best, R. S. 10-301 is but partly effective. These decisions recognize and apply the rule that the latest legislation is controlling, insofar as it relates to the same subject.

Notwithstanding the broad language of R. S. 10-301 there is ground for saying that the legislature never intended it to apply to poor-relief bonds issued by a county. We are told that at the time of the enactment of that statute there had been no statute enacted in this state authorizing a county to issue poor-relief bonds; indeed, that there was no such statute until 1933. There is room for the argument that the legislature, in enacting it, had in mind only the kinds and classes of bonds then known to our law, and that it could not be said to have intended the statute to apply to a kind or class of bonds then unknown. In addition to what may be said to be the common understanding relating to legislative intent, as shown by statutory enactment, there is some authority for this view. In *State v. Kansas City*, 83 Kan. 431, 111 Pac. 493, speaking of section 6 of chapter 62 of the Laws of 1909, the court said:

"Obviously the legislature had no intention of applying the limitation to any class of bonds that had previously been exempt from its operation." (p. 433.) (Citing authorities.)

Prior to 1933 the expenses of the poor relief in a county were paid by moneys derived from taxation. If that were insufficient, warrants were issued, later paid by moneys raised by taxation, or by bonds authorized to be issued to fund outstanding obligations of a county. In 1933 the legislature, by a series of acts, undertook to put the financial affairs of counties and other subdivisions of the state on a better financial basis. It enacted the "cash-basis law" (Laws 1933, ch. 319), by which such governmental units were required to balance their respective accounts and prohibited from overdrawing them, and a new "budget act" (Laws 1933, ch. 316), requiring all anticipated expenditures to be classified in advance and means of payment prescribed. Realizing these statutes might handicap a county in the relief of the poor, the number of which had increased greatly by reason of severe general financial depression, the legislature authorized poor-relief bonds to be issued under certain circumstances (Laws 1933, ch. 193), and at the special session of the legislature later in that year another act for that purpose was passed (Laws 1933, Special Session, ch. 67). Both of these acts for

the issuing of poor-relief bonds were limited in time, the latest one expiring in January, 1935. The legislature of 1935, following up this plan, enacted the statute under which the bonds in this case were issued (Laws 1935, ch. 192). Collectively these three statutes authorize the issuance of poor-relief bonds amounting in the aggregate to 1⅗ percent of the assessed value of the property in a county. In enacting these statutes the legislature did a futile thing if the limitation of bonded indebtedness prescribed by R. S. 10-301 is to apply to such bonds. In enacting these statutes the legislature was prescribing laws making it possible for the several counties of the state to perform the duties imposed upon them by our constitution (art. 7, § 4), which reads:

"The respective counties of the state shall provide, as may be prescribed by law, for those inhabitants, who, by reason of age, infirmity, or other misfortune, may have claims upon the sympathy and aid of society."

The statute under consideration (Laws 1935, ch. 192) contains its own limitation as to the amount of bonds which may be issued under it in any county. Its title says it imposes "conditions and restrictions," and the act clearly does so. That fact itself indicates the legislature did not consider the bonds as being governed by any prior general statute of limitation as to the amount of bonds a county may issue. The issue of bonds in question is within the limitations provided in that act. The act further provides the bonds issued may be in addition to any amount provided for in the county's budget. The act of 1933 (Laws 1933, ch. 193) contained a similar provision. The later act of 1933 (Laws 1933, Special Session, ch. 67) contained a similar provision; and, also, contained this language: "Such bonds may be issued in excess of any bonded debt limit provided by statute." This exact language is not found in the 1933 act (Laws 1933, ch. 193), nor in the 1935 act (Laws 1935, ch. 192). The absence of this exact language from the latter statute forms the principal basis for the argument on behalf of defendant in this proceeding.

Defendant argues that upon a revision or reënactment of a statute a change of wording such as the omission in the later statute of a provision contained in the early one indicates a change of legislative purpose, citing *Hauserman v. Clay County*, 89 Kan. 555, 559, 132 Pac. 212; *City of Topeka v. Wasson*, 101 Kan. 824, 168 Pac. 902; *Ritchie v. Ahlstedt*, 105 Kan. 739, 186 Pac. 131; *Schmeling v. F. W. Woolworth Co.*, 137 Kan. 573, 21 P. 2d 337; and cases

of similar import from other jurisdictions. It is pointed out that the three statutes last above mentioned had the same general purpose, namely, the raising of money by taxation or by bond issue for the relief of the poor, and that the language, "Such bonds may be issued in excess of any bonded debt limit provided by statute," contained in chapter 67 of the Laws of 1933, Special Session, being omitted from chapter 192 of the Laws of 1935, indicates a clear legislative purpose to have the amount of the bonds authorized by the later act limited by any prior applicable limitation statute such as R. S. 10-301. It is sufficient answer to this argument to say that while it would have been prudent to use that specific language in the 1935 act, for the use of it would have made this lawsuit unnecessary, the use of that exact language was not essential to show a legislative purpose not to have the bonds issued under the act limited by R. S. 10-301. Certainly other language might be used to show the amount of the bonds was not intended to be so limited. The provisions of the act indicating they were not to be limited by R. S. 10-301 may be summarized as follows: (1) They were bonds "for the relief of the poor," being a purpose for the issuing of bonds by a county unknown in our legislative history at the time of the enactment of R. S. 10-301, and hence can hardly be thought of as having been intended to be included in the restrictions provided by that act. (2) The title to the act (Laws 1935, ch. 192) discloses a legislative purpose of providing therein its own "conditions and restrictions," as well as providing a "certain procedure" for the issuance of such bonds. (3) The act contains specific restrictions upon the amount of bonds to be issued under it, and not only the total amount, but the amount that may be issued in any one of three specified years. (4) The amount of bonds authorized to be issued by this act and the two acts of 1933, authorizing bonds for the same general purpose, in the aggregate exceeds the limitation provided by R. S. 10-301, irrespective of any other bonded indebtedness of a county. (5) The procedure provided the restraining influence of the approval of the state tax commission. This itself not only is unusual in a statute providing for the issuance of bonds, but is exceptionally appropriate with respect to bonds for the relief of the poor. (6) The bonds issued under the act may be in addition "to any amount provided for in the budget of the county." Now the budget of the county details anticipated expenditures (Laws 1933, ch. 316) for each individual fund, and prohibits the creation

of any indebtedness not provided for in such budget. (7) Our constitution requires counties to furnish certain relief to the poor, as provided by law, and thereby imposes a duty upon the legislature to enact statutes enabling the county to perform that duty. The act in question indicates the legislature was intending to provide a law by which the county could do that. Perhaps other points might be suggested, but we deem these sufficient to show conclusively that the bonds issued under the act were not to be limited in amount by R. S. 10-301. If R. S. 10-301 ever applied to poor-relief bonds it is superseded by chapter 192 of the Laws of 1935 as to the bonds in question.

It is the judgment of the court that defendant should register the bonds in question. It is ordered that the writ issue.