No. 35,701

THE CITY OF COUNCIL GROVE, *Plaintiff*, v. A. J. SCHMIDT, City Clerk of the City of Council Grove, *Defendant*.

(127 P. 2d 250)

Opinion filed June 29, 1942.

*Walter E. Hembrow,* of Council Grove, argued the cause for the plaintiff.
*H. Lloyd Ericsson,* of Topeka, argued the cause for the defendant.

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding in which the plaintiff city seeks a peremptory writ of mandamus against the defendant city clerk to compel him to register bonds of the city issued under the provisions of Laws 1917, chapter 87, as amended, and now appearing as G. S. 1935, 12-635 to 12-646, inclusive.

So far as is here necessary to note the plaintiff's motion for the writ alleged the plaintiff is a city of the second class and that the governing body of the city had passed the resolution required by G. S. 1935, 12-636, and subsequent thereto had performed all other things requisite for completion of work under G. S. 1935, 12-635 *et seq.;* that the city is required to issue bonds in order to pay for the work; that the city has heretofore, for other purposes, issued general obligation bonds to maximum amount otherwise permitted by law and that the bonds are outstanding and constitute valid bonded indebtedness of the city; that the defendant city clerk was directed to make preparations for and to register the bonds as required by G. S. 1935, 10-107, and that he refused for the asserted reason the issuance and registration of the bonds would be in violation of G. S. 1935, 14-408 and 10-303; that the refusal of the city clerk is wrongful; that G. S. 1935, 12-635 to 12-646, inclusive, is an emergency act and authorizes the governing body to issue bonds in excess of the limitations otherwise placed upon it by G. S. 1935, 14-408 and 10-303 and all other limiting statutes, particularly because of G. S. 1935, 12-646, as said section is paramount and supersedes all bond-limiting statutes, and that the legislature has made it possible for cities in the event of emergencies, as prescribed by G. S. 1935, 12-635 *et seq.,* to protect property although to do so might place the bonded indebtedness in excess of limiting provisions in ordinary circumstances. The prayer is omitted.

The defendant has filed a motion to quash, urging as a matter of law that plaintiff's motion should be denied because the city's bonded indebtedness now equals the limit of bonded indebtedness

for such city under G. S. 1935, 10-303, and it would be unlawful for defendant to register the bonds. There is no issue concerning regularity of the proceedings leading up to the issuance of the bonds.

It is here noted that plaintiff's motion does not disclose the amount of the proposed bond issue, the city's assessed value of all taxable property within the city, or the amount of its present bonded indebtedness; but on oral argument it was admitted the proposed bond issue, taken in conjunction with the present outstanding bonded indebtedness, would exceed twenty-five percent of the assessed value of all the taxable property within the city.

Under the pleadings the principal issue is whether the proposed bond issue is in violation of G. S. 1935, 10-303, or whether by reason of G. S. 1935, 12-646, it is not subject to the limitation of the first-mentioned section.

Plaintiff's characterization of the act under which the bonds are to issue as an emergency act or as one providing relief from an emergency is not accurate. Under the act any city near where there is, or through which there flows a non-navigable natural watercourse, is authorized to exercise the right of condemnation and to construct drains, canals or artificial watercourses or to perform other specified works to protect the city and public and private property, under procedure outlined in the statute. Right to exercise the powers granted is not contingent on any emergency—perhaps it might better be said the powers granted are to be exercised to prevent damages should an emergency arise.

When Laws 1917, chapter 87, was originally enacted, it was provided by section 10 thereof that the city might issue internal improvement bonds to pay the costs of the improvement, the credit of the city being pledged for their payment. By section 11, it was provided the bonds should be paid "by the levy of a general tax." In the revision of 1923, section 10 was revised to conform to the general bond law now appearing as G. S. 1935, chapter 10, article 1. Thereafter section 11 was amended by Laws 1927, chapter 99, to make provision for special benefits, etc., and it was provided the remaining cost shall be assessed against the city generally and the bonds shall be paid "by the levy of a general tax on all the taxable property in said city."

Section 12 of the original act (G. S. 1935, 12-646), although slightly revised in 1923, has never been amended, and now reads as follows:

"That bonds issued under this act shall not be included in fixing the limit of bonded indebtedness of cities of the second class, as provided in Laws of 1911, chapter 109, section 1 (14-408)."

When the above act was passed in 1917 there were at least two statutes limiting the bonded indebtedness of cities of the second class. One of these statutes was originally enacted in 1871, and was last amended by Laws 1911, chapter 109. It was slightly changed by the revision of 1923, and now appears as G. S. 1935, 14-408. The changes made do not affect the problem before us. This statute is the one referred to in the 1917 act heretofore mentioned. The other statute is not mentioned in the 1917 act. It was originally enacted as Laws 1913, chapter 126. Section 1 made provision for limitation, and contained a proviso as to bonds already issued. Section 2 repealed all laws or parts of laws in conflict and section 3 provided when it should take effect. Section 1 was amended by Laws 1920, chapter 22, the amending act repeating verbatim all of section 1 of the amended act except the proviso, and adding two further provisions. This section has never been amended, and now appears as G. S. 1935, 10-303, and reads:

"At no time shall all the bonded indebtedness of any city of the second or third class for all purposes, exceed fifteen percent of the assessed value of all the taxable property within such city as shown by the assessment books of the year next previous to the one in which a new issue of bonds is proposed to be made: *Provided*, That bonds issued to pay the cost of improvements for which a special tax is levied upon the property improved and bonds issued to pay the cost of improvement of intersections of streets, alleys and avenues, and that portion of the street immediately in front of city property, and bonds issued for general sewers, shall not be included in estimating said bonded indebtedness: *Provided further*, That the total bonded indebtedness of any such city for all purposes shall at no time exceed twenty-five percent of the assessed value of all the taxable property within such city as shown by the assessment books of the year previous to the one in which a new issue of bonds is proposed to be made."

As the above history discloses, the several acts mentioned confer power or place limits with respect to the bonded indebtedness of a city of the second class and are to be considered as *in pari materia*, in the solution of the problem presented. (*Clark v. Murray*, 141 Kan. 533, 537, 41 P. 2d 1042.)

We first note the contention of the defendant that G. S. 1935, 12-646, quoted above, does not authorize an issue of bonds in excess of the limitations set in G. S. 1935, 14-408 or 10-303, but only provides they shall not be counted thereafter in determining the amount of

outstanding bonded indebtedness. We think the language used is not susceptible of such an interpretation or construction. Perhaps the section could have been more clearly stated. It appears, however, that authority to issue the bonds is granted by section 10, to which reference has been made. Unless some provision were made to the contrary, the amount of indebtedness to be created would be subject to the limiting acts to which reference has been made. To avoid that result, the legislature enacted the section under discussion. We think it refers clearly to a present situation, and that the legislative intention was that the bonds then being issued should not be included in determining whether the limit of bonded indebtedness was then being exceeded.

The history of the acts under consideration shows that each was included in the revision of the statutes made in 1923, and that if there were inconsistencies or irreconcilable provisions, they were carried forward into the Revised Statutes of 1923, and except as subsequently amended, are now included in the General Statutes of 1935.

It is the recognized rule that where successive acts of the legislature covering the same subject are in conflict with each other, the conflicts shall be resolved and both acts given effect, if possible, but if they are not reconcilable, the last expression of the legislature prevails, and this is true notwithstanding the conflicting acts were carried forward into an 'official revision and codification enacted by the legislature. (*Iola B. & L. Ass'n v. Allen County Comm'rs*, 152 Kan. 365, 103 P. 2d 788; *State, ex rel., v. Moore*, 154 Kan. 193, 117 P. 2d 598; *Arkansas City v. Turner, State Auditor*, 116 Kan. 407, 226 Pac. 1009; and cases cited in each.)

We take up first the limitation prescribed by Laws 1911, chapter 109, G. S. 1935, 14-408. By the express terms of Laws 1917, chapter 87, section 12, G. S. 1935, 12-646, the bonds issued under it are not subject to the limitations of the first act, and it need not be noticed further.

The effect of Laws 1920, chapter 22, G. S. 1935, 10-303, may not be disposed of so readily. We have heretofore directed attention to the fact that this act was an amendment of Laws 1913, chapter 126, the provisions of which were included in the amending act. Among the rules for statutory construction enacted by the legislature is the last sentence of G. S. 1935, 77-201, *first*, reciting:

"The provisions of any statute, so far as they are the same as those of any

prior statute, shall be construed as a continuation of such provisions, and not as a new enactment."

Time and space do not permit a review of our many decisions treating of the rule so expressed. See the annotations to the statute. Under the above rule there can be no question that the portion of G. S. 1935, 10-303, preceding the first "provided" must be held to be a continuation of the 1913 act and not a new enactment, and standing alone it could not have the effect of limiting the amount of bonds issued under the 1917 act. But of what effect are the two provisos? Under the first part of the act the bonded indebtedness "for all purposes" is limited to fifteen percent. Under the first proviso, certain types of bonds, later referred to, shall not be included in estimating the bonded indebtedness, and then follows the second proviso that the "total bonded indebtedness . . . for all purposes shall at no time exceed twenty-five percent." As we read the statute, it provides that the general bonded indebtedness may not exceed fifteen percent and, in determining the amount, the bonds specified in the first proviso shall not be included, but that the total of both may not exceed twenty-five percent. By subtraction the amount of bonds covered by the first proviso may not exceed ten percent if the general limit of fifteen percent has been reached. It is to be noted, however, that the classes of bonds included in the second proviso do not include bonds issued under the act of 1917 for, as has been shown heretofore, the bonds are not of a type where a special tax is levied upon the property improved, nor for street improvements nor for general sewers. The bonds involved are not covered by the first part of the limiting act, for it is merely a continuance of prior legislation; they are not included in the classes of bonds mentioned in the first proviso, and the second proviso refers only to the total of the two groups. The limiting act contains no provision amending or repealing section 12 of the 1917 act, and by reason of its terms may not be said to repeal that section by implication.

When the legislature in 1920 enacted the limiting act, it took notice of G. S. 1935, 77-201, *first*, quoted above, and knew that the first portion of the limiting act would not affect bonds issued under the 1917 act, it did not include the latter class of bonds in the two provisos, and it must be concluded the intent was not to place a limitation on bonds to be issued under the provisions of the act of 1917. As bearing on the question see *State, ex rel., v. Kansas City*, 83 Kan. 431, 111 Pac. 493; *State, ex rel., v. Robb*, 143 Kan. 527, 55 P. 2d 815.

Our conclusion is that plaintiff is entitled to judgment, but for the reason the defendant's refusal to act was because he questioned his authority under the law and was not arbitrary, we will not issue a formal writ at this time and no costs will be imposed. (See *Stevens v. McDowell,* 151 Kan. 316, 323, 98 P. 2d 123.) It is so ordered.